# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTICANCER, INC. a California corporation,<br><br>                            Plaintiff,<br><br>  vs.<br><br>PFIZER INC., a Delaware corporation, CROWN BIOSCIENCE, INC., a California corporation, and DOES 1–50,<br><br>                           Defendant. | CASE NO. 11CV107 JLS (RBB)<br><br>**ORDER (1) GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT OF NONINFRINGEMENT BASED ON DEFECTIVE INFRINGEMENT CONTENTIONS; (2) STAYING ALL PENDING DEADLINES IN THE CASE; AND (3) SETTING STATUS HEARING**<br><br>(ECF No. 46) |

Presently before the Court is Defendant Pfizer Inc.'s ("Pfizer") Motion for Summary Judgment of Noninfringement Based on Defective Infringement Contentions, (MSJ, ECF No. 38), which Defendant Crown Bioscience, Inc. ("CrownBio") joins in part, (Not. Joinder, ECF No. 40). Also before the Court are the associated oppositions and replies, as well as the parties' briefs in response to the Court's Order for supplemental briefing. (Order, May 3, 2012, ECF No. 49) A hearing on the motion was held on May 31, 2012.[1] Having considered the parties' arguments and the law, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' motion for summary judgment and conditionally grants AntiCancer an opportunity to supplement its PICs.

---

[1] The Court also heard oral argument on CrownBio's Motion for Judgment on the Pleading on the Fifth Claim for Relief, (Mot. J. on Pleading, ECF No. 46), which Pfizer joins, (Not. Joinder, ECF No. 56), on this date. That motion will be addressed in a separate Order.

**BACKGROUND**

Plaintiff AntiCancer Inc. ("AntiCancer") first filed this action against Pfizer on January 19, 2011, asserting claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment. (Compl., ECF No. 1)  AntiCancer later amended its complaint, adding CrownBio as a defendant and asserting two patent infringement claims—one against Pfizer alone, and the other against both Pfizer and CrownBio. (FAC, ECF No. 19)  Soon thereafter, in accordance with the time prescribed by Patent Local Rule 3.1 and Magistrate Judge Brooks's scheduling order, (Scheduling Order, ECF No. 13), AntiCancer served its preliminary infringement contentions ("PICs"), (Decl. of Olga Berson ISO MSJ ("Berson Decl.") Ex. 2, ECF No. 38-4 (PICs)).

AntiCancer contends that Pfizer infringed Claims 1, 5, 7, 8, 9, and 10 of U.S. Patent No. 6,649,159 ("the '159 patent"), and that Pfizer and CrownBio together infringed Claims 1, 11, 13, 15, 17, 19, 21, 23, 25, and 26 of U.S. Patent No. RE39,337 ("the RE'337 patent"), and Claims 1 and 11 of U.S. Patent No. 5,569,812 ("the '812 patent"). (*Id.* at 3)[2]  AntiCancer points to a research paper published by Pfizer scientists in support of its allegations of infringement of the '159 patent, and to a poster presentation by Pfizer and CrownBio scientists in support of its allegations of infringement of the RE'337 and '812 patents. (*Id.*)

**1. The '159 Patent**

The '159 patent relates to "the whole-body external optical imaging of gene expression." '159 patent, at [57].  Relevant here, Claim 1 of the '159 patent recites "[a] method to monitor the ability of a promoter to promote expression in an animal of an endogenous gene that is controlled by said promoter," '159 patent col.24 ll.44–46, and contains a further limitation requiring that "the ability of said promoter to promote expression is monitored, '159 patent col.24 ll.56–57.  The parties refer to this as the "Promoter Monitoring" element.

Claim 1 also recites a claim element requiring "delivering, to an animal, cells containing a nucleic acid encoding a flurophore operatively linked to the promoter of said endogenous gene whose ability to promote expression is to be analyzed." '159 patent col.24 ll.47–50.  The parties

---

[2] Pinpoint citations to exhibits utilize the page numbers assigned by CM/ECF.

refer to this as the "Delivering Cells" element.

According to AntiCancer, Pfizer has allegedly infringed the '159 patent "through the activities described in" a research paper authored by several Pfizer scientists. (FAC ¶ 22, 43, ECF No. 19) Specifically, the paper "describes a study in which [green fluorescent protein] expression in mouse embryos was monitored and non-invasively imaged." (*Id.* ¶ 22)

**2. The RE'337 Patent**

The RE'337 patent covers "[a] nude mouse model for human neoplastic diseases having histologically intact human neoplastic tissue transplanted onto an organ of the mouse which corresponds to the human organ from which the tissue is obtained." RE'337 patent, at [57]. Claim 1 of the RE'337 patent discloses "[a] nude mouse model for progression of human neoplastic disease, the progression of said disease being characterized by grown of a primary tumor site and metastasis to secondary tumor sites," RE'337 patent col.11 ll.14–17,[3] with the further limitation that the mouse "has sufficient immuno-deficiency to allow said transplanted neoplastic tissue to grow at said primary site and metastasize to said secondary tumor sites, so as to mimic the progression of the neoplastic disease including the metastatic behavior of said neoplastic disease in humans," RE'337 patent col.11 ll.23–28. The parties refer to this as the "Metastasis to a Second Site" element.

According to AntiCancer, Pfizer and CrownBio infringed on this patent by collaborating to "surgically orthotopically implant[] tumor fragments from patient liver-tumor tissues into the liver of mice, and then treated them with a drug called sunitinib malate," as presented in a joint poster presentation and announced in a joint press release. (FAC ¶¶ 23–24, 51, ECF No. 19)

**3. The '812 Patent**

The '812 patent also covers "[a] nude mouse model for human neoplastic disease having histologically intact human neoplastic tissue transplanted onto an organ of the mouse which corresponds to the human organ from which the tissue is obtained." '812 patent, at [57]. The '812 patent was first issued on October 29, 1996, '812 patent, at [45], and was later reissued as the

---

[3] All italics and bracketed material—which are used in the reissued patent to delineate changes from the original patent—have been omitted from quotations to the RE'337 patent in this Order.

1 RE'337 patent on October 10, 2006, RE'337 patent, at [64]. AntiCancer asserts that Pfizer and
2 CrownBio infringe the '812 patent for the same reasons they infringe the RE'337 patent. (*See*
3 FAC ¶¶ 48–55, ECF No. 19; Berson Decl. Ex. 2, at 3, ECF No. 38-4)

## LEGAL STANDARD

Federal Rule of Civil Procedure 56 permits a court to grant summary judgment where (1) the moving party demonstrates the absence of a genuine issue of material fact and (2) entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Material," for purposes of Rule 56, means that the fact, under governing substantive law, could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997). For a dispute to be "genuine," a reasonable jury must be able to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248. When ruling on a summary judgment motion, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

In the context of patent litigation, "[i]nfringement is assessed by comparing the accused device to the claims; the accused device infringes if it incorporates every limitation, either literally or under the doctrine of equivalents. If, however, even one claim limitation is missing or not met, there is no literal infringement." *MicroStrategy, Inc. v. Bus. Objects, S.A.*, 429 F.3d 1344, 1352 (Fed. Cir. 2005) (internal quotation marks omitted) (citations omitted); *accord Glaxo, Inc. v. Novopharm, Ltd.*, 110 F.3d 1562, 1565 (Fed. Cir. 1997).

## ANALYSIS

**1. The '812 Patent**

Because the '812 patent has been reissued, Defendants move for summary judgment on the ground that "[a]s a matter of law, the '812 Patent is now unenforceable because AntiCancer surrendered the patent when the Patent Office issued the RE'337 Patent." (MSJ 17, ECF No. 38 (citing 35 U.S.C. § 252 ("The surrender of the original patent shall take effect upon the issue of the reissued patent."))) AntiCancer does not oppose summary judgment on this basis, and conceded at oral argument that summary judgement should be granted as to the '812 patent. The Court

accordingly **GRANTS** summary judgment in favor of Defendants on the '812 patent.

**2. Sufficiency of Preliminary Infringement Contentions – The '159 & RE'337 Patents**

Defendants' motion for summary judgment argues that AntiCancer's infringement contentions are insufficient, and therefore that judgment should be entered in Defendants' favor. (*See generally* MSJ, ECF No. 38)  Specifically, Defendants assert that "AntiCancer served PICs that (1) omit contentions regarding required claim elements, and (2) fail to provide the required detail regarding all claim elements." (*Id.* at 2–3)

This district's Patent Local Rules require a party claiming patent infringement to serve a "Disclosure of Asserted Claims and Preliminary Infringement Contentions" containing the following information:

> a. Each claim of each patent in suit that is allegedly infringed by each opposing party;
>
> b. Separately for each asserted claim, each accused apparatus, product, device, method, act, or other instrumentality ("Accused Instrumentality") of each opposing party of which the party is aware. This identification must be as specific as possible. Each product, device and apparatus must be identified by name or model number, if known. Each method or process must be identified by name, if known, or by any product, device, or apparatus which, when used, allegedly results in the practice of the claimed method or process;
>
> c. A chart identifying specifically where each element of each asserted claim is found within each Accused Instrumentality, including for each element that such party contends is governed by 35 U.S.C. § 112(6), the identity of the structure(s), act(s), or material(s) in the Accused Instrumentality that performs the claimed function; [and]
>
> d. Whether each element of each asserted claim is claimed to be literally present and/or present under the doctrine of equivalents in the Accused Instrumentality[.]

Patent Local Rule 3.1. The Patent Local Rules thus obligate parties to state with specificity the theories upon which they plan to rely, and to do so early in the litigation. This "require[s] parties to crystallize their theories" early in the litigation so as to "prevent the 'shifting sands' approach to claim construction." *O2 Micro Int'l Ltd. v. Monolithic Power Sys.*, 467 F.3d 1355 (Fed. Cir. 2006) (quoting *Atmel Corp. v. Info. Storage Devices, Inc.*, No. C 95-1987, 1998 U.S. Dist. LEXIS 17564, at *7 (N.D. Cal. Nov. 4, 1998)).[4]

---

[4] This Order cites to out-of-district case law interpreting patent local rules promulgated by other districts that are substantively similar to our own as persuasive authority. *See Nesscap Co. v. Maxwell Techs.*, 2008 U.S. Dist. LEXIS 3357, at *4 (S.D. Cal. Jan. 16, 2008) (Major, Mag. J.).

At issue here is what level of detail a party is required to provide in its PICs in order to satisfy Patent Local Rule 3.1(c)'s mandate to "identify[] *specifically* where each element of each asserted claim is found within each Accused Instrumentality." (emphasis added). On the one hand, the Court cannot argue with AntiCancer's point that it should not be required "to write a virtual scientific treatise on how its evidence relates to each term in its claims." (Resp. in Opp'n 3, ECF No. 41) But on the other hand, vague or conclusory infringement contentions hamper a defendant's ability to prepare an effective defense to the plaintiff's allegations of infringement. *Diagnostic Sys. Corp. v. Symantec Corp.*, 2009 U.S. Dist. LEXIS 53916, at *19 (C.D. Cal. June 5, 2009) (citing *Am. Video Graphics, L.P. v. Elec. Arts, Inc.*, 359 F. Supp. 2d 558, 560 (E.D. Tex. 2005)). Indeed, the patent local rules are designed carefully to "balance the right to develop new information in discovery with the need for certainty as to the legal theories." *O2 Micro Int'l*, 467 F.3d at 1366; *see also Data Retrieval Tech., LLC v. Sybase*, 2009 U.S. Dist. LEXIS 129454, at *8 (N.D. Cal. Sept. 11, 2009) (striking this balance and explaining that "infringement contentions need not prove infringement" but must "outline a plaintiff's theories of infringement").

Weighing these considerations, the Court believes that the appropriate balance requires that the PICs contain "sufficient specificity to provide defendants with notice of infringement beyond that which is provided by the mere language of the patents themselves," but need not be so detailed as to transform the PICs into a "forum for litigation of the substantive issues." *Network Caching Tech., LLC v. Novell, Inc.*, 2003 U.S. Dist. LEXIS 9881, at *13 (N.D. Cal. Mar. 21, 2003); *see also Shared Memory Graphis LLC v. Apple, Inc.*, 812 F. Supp. 2d 1022, 1025 (N.D. Cal. 2010) (Chen, Mag. J.) ("[A]ll courts agree that the degree of specificity under Local Rule 3-1 must be sufficient to provide reasonable notice to the defendant why the plaintiff believes it has a 'reasonable chance of proving infringement.'" (quoting *View Engineering, Inc. v. Robotic Vision Sys., Inc.*, 208 F.3d 981, 986 (Fed. Cir. 2000))). As the Northern District has explained with regard to its identical local patent rule,

> Patent LR 3-1 [does not] require that [a plaintiff's] preliminary infringement theories be incontrovertible or presented in excruciating detail. While the rule states that these disclosures should be "as specific as possible," there is no requirement that [a plaintiff] thoroughly present and successfully defend its theories of infringement in the confines of a PIC chart. At this stage, mapping specific elements of defendants' allegedly infringing products onto [the

plaintiff's] claim construction is adequate.

*Network Caching*, 2003 U.S. Dist. LEXIS 9881, at *14.

Importantly, PICs are generally prepared and served early in the litigation, and so the Court is cognizant of the limited details at AntiCancer's disposal regarding how Defendants infringed on AntiCancer's patents. But, at a minimum, "a plaintiff is required to include in its infringement contentions all facts known to it, including those discovered in its pre-filing inquiry," *Shared Memory Graphics*, 812 F. Supp. 2d at 1024, and any "publicly available information which, if utilized, would . . . provide[] more information to Defendants" regarding the plaintiff's infringement claims, *Linex v. Techs., Inc. v. Belkin Int'l., Inc.*, 628 F. Supp. 2d 703, 709 (E.D. Tex. 2008). This should include an explanation of how AntiCancer believes Defendants' accused infringing products read on the asserted claim language. *See Connectel, LLC v. Cisco Sys. Inc.*, 391 F. Supp. 2d 526, 528 (E.D. Tex. 2005).

With these considerations in mind, the Court now turns to the PICs at issue here. Having independently reviewed the PICs, the Court agrees with Pfizer that AntiCancer has done little to improve upon the defective PICs that proved to be dispositive in its earlier infringement lawsuits.[5] For the reasons explained, the Court finds the PICs insufficient to comply with Patent Local Rule 3.1.

## A. The '159 Patent

Pfizer asserts that AntiCancer's PICs fail to establish that Pfizer's allegedly infringing acts included practicing either the Promoter Monitoring element or the Delivering Cells element of Claim 1 of the '159 patent. And, because Claims 5, 7, 8, 9, and 10 all depend from Claim 1, Pfizer asserts that these defects warrant judgment as a matter of law as to all of the asserted claims. (MSJ

---

[5] Pfizer points to two other cases in which this Court disposed of infringement claims filed by AntiCancer on summary judgment because AntiCancer's PICs were insufficient: *AntiCancer, Inc. v. Cambridge Research & Instrumentation*, 07-CV-97 JLS (RBB) [hereinafter, "*CRI*"], and *AntiCancer, Inc. v. Carestream Health, Inc.*, 07-CV-1004 JLS (AJB) [hereinafter, "*Carestream*"]. Pfizer places much emphasis on these earlier cases, implying that because the Court granted the defendants' motions for summary judgment there, the Court ought to do so here as well. (*See* MSJ 4–9, ECF No. 38) Though the cases are factually similar—and, indeed, concern one of the same patents at issue here, the '159 patent—AntiCancer's PICs differ, as do the accused instrumentalities. Thus, the Court declines Pfizer's invitation to simply walk the same path that was taken in those cases, and considers anew the sufficiency of AntiCancer's PICs as well as what recourse is appropriate should the PICs be deemed insufficient.

13, ECF No. 38); *see also Monsanto Co. v. Syngenta Seeds, Inc.*, 503 F.3d 1352, 1359 (Fed. Cir. 2007) (citing *Wahpeton Canvas Co., Inc. v. Frontier, Inc.*, 870 F.2d 1546, 1552 (Fed. Cir. 1989) ("One who does not infringe an independent claim cannot infringe a claim dependent on (and thus containing all the limitations of) that claim.")).

*(1) The "Promoter Monitoring" Element*

In support of its allegations of infringement regarding the Promoter Monitoring element, AntiCancer's PICs point to Figure 2 and a portion of the text from the "Defects in embryonic development of EGLN1/PHD2 knockdown transgenic mice are associated with induction of Ogfbp in the placenta" paper. (Berson Decl. Ex. 2, at 7–8, ECF No. 38-4) AntiCancer's PICs assert that Figure 2 and the statement "The localization and intensity of GFP fluorescence in conceptuses from both treatment groups was varied" constitute "evidence of the accused instrumentality." (*Id.* at 8) Pfizer contends, however, that "the quote and the general reference to Figure 2 . . . fail to indicate that Pfizer's conduct involved any monitoring of a promoter." (MSJ 11–12, ECF No. 38)

Here, the Court find that the PICs insufficiently set forth how Pfizer's allegedly infringing conduct satisfies Claim 1's Promoter Monitoring element. Neither of the two bare references to the Pfizer paper supplies sufficient information for how Pfizer allegedly practiced the Promoter Monitoring element. First, the PICs cite to a single sentence from the Pfizer paper as evidence that Pfizer infringed on the Promoter Monitoring element, without providing any explanation whatsoever for how that sentence maps on to the claim language:

| Claim Language | Pfizer Paper |
| --- | --- |
| "[T]he ability of said promoter to promote expression is monitored . . . ." | "The localization and intensity of GFP fluorescence in conceptuses from both treatment groups was varied." |

(Berson Decl. Ex. 2, at 8, ECF No. 38-4) On its face, the text from the paper says nothing about "promoters" or "monitoring." And although AntiCancer "incorporates the full text of the paper" into its PICs, such a generalized reference is insufficient to satisfy the specificity requirement of Rule 3.1(c).

//

AntiCancer needs to connect the dots for how Pfizer's research, as detailed in the paper, reads on the asserted claim language. *See Connectel*, 391 F. Supp. 2d at 528. Even at this early stage, AntiCancer is capable of this much. Indeed, in its opposition brief Pfizer makes this connection: "[I]t is the signal of GFP fluorescence which indicates the *activity of the promoter*, and the 'localization and intensity' of such fluorescence, and thereby of the promoter, is determined by viewing or imaging the subject over time – in other words, by 'monitoring' it." (Resp. in Opp'n 4, ECF No. 41)[6] But this is too little, too late.[7] *See CRI*, 07-CV-97 JLS (RBB), Docket No. 214, at 7 (refusing to allow AntiCancer to "introduce new theories of infringement [in its opposition brief] based on evidence which AntiCancer did not disclose in its PICs" (citing *O2 Micro Int'l*, 467 F.3d at 1368)).

Second, the PICs offer no explanation for how Figure 2 indicates that Pfizer practiced the Promoter Monitoring element. For this reason, the figure in no way serves to "identify specifically where each element of each asserted claim is found within each Accused Instrumentality," as Patent Local Rule 3.1(c) requires, and lends little to no support in creating a triable question of fact that Pfizer practices this element of Claim 1. AntiCancer asserts in its opposition brief and via a declaration from Robert M. Hoffman, Ph.D., that Figure 2 "clearly indicates that the promoter was monitored" because

> Fluorescence intensity was graded as either "0, +, ++, or +++." Therefore, expression of GFP varied from "0" at the lowest end to "+++" at the highest end, which means the activity (intensity) of the promoter linked to GFP was varied. The scientist conducting this experiment could only have rated the varying intensity of the GFP promoter by monitoring it.

(Resp. in Opp'n 4, ECF No. 41 (citing (Decl. of Robert M. Hoffman ISO Resp. in Opp'n

---

[6] Pfizer argues that even considering this newly asserted theory of infringement, the PICs remain defective because "the Pfizer researchers correlated the location and intensity of GFP fluorescence to embryo malformation and growth. They did not, as the claim language requires, correlate GFP fluorescence to promoter activity." (Reply in Supp. 6, ECF No. 43) The Court finds that this argument goes more to claim construction and the ultimate infringement determination, however, and as such is inappropriately raised at this early stage of the proceedings. *Network Caching*, 2003 U.S. Dist. LEXIS 9881, at *12 ("PICs are not meant to provide a forum for litigation of the substantive issues.").

[7] The Court stresses that by referencing the arguments AntiCancer raises in its opposition brief, the Court is not at this point making a determination whether those contentions—if contained in the PICs—would be sufficient to satisfy Patent Local Rule 3.1.


("Hoffman Decl.") ¶ 6, ECF No. 41-1)))  But, again, the Court declines to rely on AntiCancer's theories of infringement introduced for the first time in opposition to summary judgment, and based on evidence which was not previously disclosed in the PICs.

Thus, the Court concludes that the PICs fail to establish with sufficient specificity that Pfizer practiced the Promoter Monitoring element of the '159 patent.

*(2) The "Delivering Cells" Element*

As to the Delivering Cells element, AntiCancer's PICs again generally point to Figure 2 with no supporting explanation, as well as a portion of the text from Pfizer's research paper that states "we generated transgenic mice expressing EGLN1 shRNA." (Berson Decl. Ex. 2, at 8, ECF No. 38-4)  In its motion for summary judgment, Pfizer asserts that neither of these vague references "indicate that Pfizer's allegedly infringing conduct involved practicing this claim element." (MSJ 12, ECF No. 38)

As with the Promoter Monitoring element, the Court finds that the PICs insufficiently set forth how Pfizer's allegedly infringing conduct satisfies Claim 1's Delivering Cells element. Neither the reference to Figure 2 nor the single sentence taken from the paper supplies sufficient information for how Pfizer allegedly practiced this element.  Again, the PICs cite to a single sentence from the Pfizer paper as evidence that Pfizer infringed on this element, and again the PICs provide no explanation for how that sentence maps on to the claim language:

| Claim Language | Pfizer Paper |
|---|---|
| "[D]elivering, to an animal, cells containing a nucleic acid encoding a fluorophore . . . ." | "[W]e generated transgenic mice expressing EGLN1 shRNA." |

(Berson Decl. Ex. 2, at 8, ECF No. 38-4)  As Pfizer correctly notes, the cited sentence "does not mention cells.  It does not mention delivering cells, fluorophores, or nucleic acids encoding fluorophores to animals.  The quoted sentence only refers to animals (i.e., 'transgenic mice') with a particular genetic trait (i.e., 'expressing' a particular gene—'EGLN1 shRNA')." (MSJ 13, ECF No. 38)  Thus, AntiCancer in no way attempts to make a connection between the sentence provided and the claim language, and the PICs additionally draw no connection between Figure 2 and the relevant claim language.

1    AntiCancer contends, however, that any "competent scientist, and even a layman, would
2 understand [from reading the quoted sentence and viewing the cited figure] the basic scientific
3 concept" that "GFP-labeled cells were delivered." (Resp. in Opp'n 5, ECF No. 41) Apparently,
4 the sentence and figure *imply*[8] that the Delivering Cells element is satisfied: "[S]uch delivery is so
5 implicit that it needs no statement." (*Id.*) Essentially, AntiCancer argues that because its common
6 knowledge that GFP comes from jellyfish—not mice—"the GFP gene had to have been
7 delivered," and therefore "[t]he images of mice embryos expressing GFP in the Pfizer
8 Article . . . are sufficient to indicate the delivery of cells element of this claim. (*Id.* (citing
9 Hoffman Decl. ¶ 7, ECF No. 41-1))

10   But the point of PICs is not to *imply* how the plaintiff contends the defendant is infringing
11 its patent; rather they are designed for a plaintiff to state *with specificity* its contentions of
12 infringement. To that end, the connections between the claim language and the "evidence of the
13 accused instrumentality" that AntiCancer makes in its opposition brief need to be set forth in the
14 PICs, even if they are "basic scientific concepts" that are generally known or publicly available.
15 *See Linex*, 628 F. Supp. 2d at 709. Because AntiCancer failed to do this much, the Court
16 concludes that the PICs fail to establish with the requisite specificity that Pfizer satisfied the
17 Delivering Cells element of the '159 patent.

18 ***B. The RE'337 Patent***

19   Defendants contend that AntiCancer's PICs fail to establish that Pfizer and CrownBio
20 practiced the Metastasis to a Second Site element of Claim 1 of the RE'337 patent. (MSJ 13–15,
21 ECF No. 38) And, because the remaining claims asserted by AntiCancer recite the same
22 Metastasis to a Secondary Site element (claims 11, 13, 15, 19, 21, 25, and 26) or depend from

---

[8] At oral argument, AntiCancer used the term "inherent" rather than "implied" in order to better explain this argument. According to AntiCancer, its theory of infringement was adequately presented in the PICs because the basic scientific concept was "inherent" in the citations provided, much as one inherently knows that tomato sauce is made with tomatoes. Applied here, AntiCancer contends that it is a basic scientific concept that in order to have a transgenic mouse, cells must have been delivered. In other words, inherent within the statement "we generated transgenic mice expressing EGLN1 shRNA" is the concept that cells containing a nucleic acid encoding a fluorophore were delivered to an animal. Ultimately, however, the Court finds that this is a distinction without a difference. Without more, the bare reference does not satisfy the specificity requirement of Patent Local Rule 3.1.

1  claims reciting that element (claims 17 and 23), Defendants move for summary judgment as to all
2  of the asserted claims.  (*Id.* at 15)
3  *(1) The "Metastasis to a Second Site" Element*
4        With regard to its allegations of infringement of the Metastasis to a Second Site element,
5  AntiCancer's PICs cite to several portions of the text of the Pfizer-CrownBio poster, with no
6  further indication how those statements map on to the claim language:

| Claim Language | Pfizer Paper |
| --- | --- |
| "A nude mouse model for progression of human neoplastic disease, the progression of said disease being characterized by growth of a primary tumor site and metastasis to secondary tumor sites, wherein said mouse has . . . sufficient immuno-deficiency to allow said transplanted neoplastic tissue to grow at said primary site and metastasize to said secondary tumor sites . . . ." | "Tumor fragments derived from patient tumor tissues were surgically implanted into the left lobe of nude mouse liver."<br><br>"Sutent treatment significantly inhibited orthotopic HCC tumor growth."<br><br>"Plasma samples were collected at different time points for alpha-feto-protein (AFP) measurement.  At termination, tumors were excised from liver and their weights and sizes were recorded."<br><br>"In addition, histological analysis confirmed that orthotopically implanted primary human tumors maintained their histopathological characteristics." |

(Berson Decl. Ex. 2, at 14–15, ECF No. 38-4)  Defendants argue that the selected quotes fail to
disclose that Pfizer and CrownBio practiced the claim element of metastasizing from the primary
site to the secondary site.  (MSJ 15, ECF No. 38)  Specifically, Defendants assert that "[t]he cited
text only refers to the ***implanting*** of tumor tissues into a mouse liver [and] say nothing about the
implanted tumor 'metastasizing' to a second organ or other location."  (*Id.*)  Further, "[t]he cited
passages only refer to a researcher excising tumor tissues ***from the same site*** where they were
implanted—the mouse liver.  The quoted text does not indicate that any excised tissue came from a
'secondary tumor site' different from the 'primary site.'"  (*Id.*)

      Bordering on turning this issue into one of claim construction rather than sufficiency of
PICs, AntiCancer counters that

      the claims of the RE'337 patent are not limited by a requirement that metastasis to
      a second site occurs, but rather are limited by the requirement that the mouse
      which is receiving the implanted neoplastic tissue " . . . has sufficient immuno-

>   deficiency to <u>allow</u> said transplanted neoplastic tissue to grow at said primary site and metastasize to said secondary tumor sites . . . ."

(Resp. in Opp'n 5–6, ECF No. 41 (ellipses in original))  Assuming for the purposes of the instant motion that this is the correct construction of the claim language, according to AntiCancer "the growth of the tumor at the site of implantation . . . is direct evidence that the mice used were sufficiently immuno-deficient to <u>allow</u> for growth at the primary site and for metastasis at secondary sites . . . ."  (*Id.* at 6 (citing Hoffman Decl. ¶ 9, ECF No. 41-1))[9]

Even considering the points AntiCancer raises in its opposition brief, AntiCancer has left out the essential connection between the claim language and the allegedly infringing acts.  *How* does the growth of the tumor at the primary site provide "direct evidence" that the mice were sufficiently immuno-deficient to allow for metastasis to secondary sites?  By skipping this essential connection, AntiCancer leaves Defendants—and the Court—guessing at how the patent was allegedly infringed, hindering Defendants' ability to prepare an effective defense.  For this reason, the Court finds that the PICs are deficient.

## C. Appropriate Remedy

Having determined that the PICs for the '159 and RE'337 patents are insufficient, the Court now turns to what the effect of this failure ought to be.  Defendants have moved for summary judgment, arguing that by failing to sufficiently set forth a prima facie case of infringement in its PICs AntiCancer has failed to create a triable issue of fact as to whether Defendants' conduct has infringed its patents, and therefore Defendants are entitled to judgment as matter of law.  Wary of such a drastic remedy for the failure to comply with a local rule, the Court ordered the parties to provide supplemental briefing on this issue.  *See, e.g.*, *Acer, Inc. v. Tech. Props.*, 2011 U.S. Dist. LEXIS 55774, at *15 (N.D. Cal. May 13, 2011) (finding any prejudice was outweighed by "the Court's interest in resolving the parties' disputes as comprehensively as

---

[9] AntiCancer further asserts that the PICs sufficiently disclose this claim element because the PICs imply that metastasis to secondary sites was measured by virtue of the fact that such metastasizing can be measured "simply by a visual examination or by palpation of the animals, as is common practice during such experiments," and that such examinations "are required by strict rules that govern the humane use of mice in research."  (Resp. in Opp'n 6, ECF No. 41)  But, as the Court concluded above, it is not enough for the PICs to *imply* a theory of infringement; it must be specifically stated so that a defendant can adequately defend itself from the allegations.

1  possible"); *Halo Elecs. v. Bel Fuse, Inc.*, 2010 U.S. Dist. LEXIS 97640, at *10 (N.D. Cal. Sept. 3,
2  2010) (Lloyd, Mag. J.) ("[T]he court concludes that amendment will advance fair resolution of the
3  issues on the merits without prejudice to [Plaintiff]."); *Zoltar Satellite Alarm Sys. v. Motorola,*
4  *Inc.*, 2008 U.S. Dist. LEXIS 108652, at 8 (N.D. Cal. Apr. 2, 2008) (Lloyd, Mag. J.) (same);
5  *Biogenex Labs., Inc. v. Ventana Med. Sys.*, 2006 U.S. Dist. LEXIS 57067, at *4 (N.D. Cal. Aug. 3,
6  2006) ("[T]he Court is extremely reluctant to dispose of substantive infringement claims based
7  upon procedural defects."). The parties were directed to address "whether the Court could/should
8  construe Defendants' motion for summary judgment instead as a motion to strike AntiCancer['s
9  PICs] and to compel AntiCancer to supplement its PICs with more detailed information in
10 compliance with Patent Local Rule 3.1." (Order, May 3, 2012, ECF No. 49). Having reviewed the
11 parties' supplemental briefing, (ECF Nos. 51, 52, 54), and thoroughly considered the issue, the
12 Court **DENIES** Defendants' motion for summary judgment and conditionally **GRANTS**
13 AntiCancer an opportunity to amend its PICs.

14 Pfizer's arguments regarding the purposes of the patent local rules are well taken, and the
15 Court will not lightly set aside the rules' mandate that litigants set forth their litigation strategy
16 early on and stick to it. But the Court notes that the rules are not viewed as "a straitjacket into
17 which litigants are locked from the moment their contentions are served. There is a modest degree
18 of flexibility, at least near the outset." *Comcast Cable Commc'ns Corp., LLC*, 2007 U.S. Dist.
19 LEXIS 98476, at *5 (N.D. Cal. Mar. 2, 2007). This is true especially in light of the delicate
20 balance necessary in preparing such contentions: *Too* specific and the litigant risks being locked
21 into a meritless position, *see Biogenex Labs., Inc. v. Ventana Med. Sys.*, 2006 U.S. 57067, at *9
22 (N.D. Cal. Aug. 3, 2006) ("While BioGenex may not have been required to include that level of
23 specificity in its PICs, it chose to do so . . . ."). Not specific enough and the litigant risks losing its
24 case for a procedural deficiency, rather than obtaining a decision on the merits.

25 Here, the Court has concluded that AntiCancer's PICs are deficient, and further finds that
26 AntiCancer acted unreasonably in submitting these woefully insufficient PICs. It seems to the
27 Court that AntiCancer was disingenuous in setting forth its theory of infringement with such vague
28 PICs given that it was made aware of the possible repercussions of insufficient PICs on at least

1 two prior occasions in cases before this Court.

2 Even in light of this, the Court doubts that Defendants will be irreparably prejudiced if
3 AntiCancer is given an opportunity to supplement its PICs. Though this lawsuit has been pending
4 for over a year, the patent infringement claims were not added until AntiCancer filed its
5 FAC—just over six months ago. The Court has not conducted a claim construction hearing, and
6 this matter is not scheduled to be set for trial until over a year from now. Thus, the Court finds
7 that it is too early in the lawsuit to dispose of the case for AntiCancer's failure to comply with a
8 local rule, but too late in the lawsuit to allow AntiCancer to cure its deficiency without "mitigating
9 conditions." *Comcast Cable*, 2007 U.S. Dist. LEXIS 98476, at *1.

10 Accordingly, the Court will permit AntiCancer to amend its PICs to supplement its
11 contentions regarding the more detailed theory of infringement articulated in its papers and at oral
12 argument. But AntiCancer may only do so on the condition that it reimburse Pfizer and CrownBio
13 for the reasonable costs and attorneys' fees they incurred in litigating the instant motion,[10] "which
14 would not have been brought or litigated in this fashion but for [AntiCancer's] unreasonable
15 conduct." *Biogenex Labs.*, 2006 U.S. Dist. LEXIS 57067, at *12; *accord Avago Techs. Gen. IP*
16 *PTE Ltd. v. Elan Microelectronics Corp.*, 2007 U.S. Dist. LEXIS 39543, at *7 (N.D. Cal. May 15,
17 2007) (Lloyd, Mag. J.); *Comcast Cable*, 2007 U.S. Dist. LEXIS 98476, at *5 ("[T]he prejudice
18 here is tolerable enough to be mitigated by an award of expenses and, once mitigated, pales beside
19 the unfairness that might result from preventing a full litigation on the merits.").

20 At oral argument, AntiCancer indicated that it would be in a better position to make an
21 election whether to amend its PICs or have summary judgment be entered in Defendants' favor
22 after notice of the amount Defendants seek in reimbursement. If AntiCancer chooses the former,
23 AntiCancer will be required to pay Defendants an amount to mitigate the expense associated with
24 their bringing the instant motion, excluding any costs associated with the Court's request for
25 supplemental briefing. Thus, within <u>fourteen days</u> of the date this Order is electronically docketed,

---

27 [10] Pfizer additionally requests fees and costs associated with its preparation of its preliminary
invalidity contentions and claim construction charts. The Court finds that reimbursement for the costs
and fees of the motion for summary judgment alone are sufficient and fair under the circumstances.
28 The Court likewise concludes that Pfizer's request for reimbursement for all the costs and fees
associated with the '812 patent is inappropriate.

- 15 - 11cv107

1  Pfizer and CrownBio[11] **SHALL FILE** separately declarations of counsel setting forth the costs and
2  attorneys' fees incurred in filing and litigating the instant motion.

3  Within <u>fourteen days</u> after service of counsels' declarations, AntiCancer **MAY FILE** any
4  objection to Defendants' statements of costs and fees, or, absent any objection, **SHALL SERVE**
5  its amended PICs or a notice of objection to the Court's conditions for amendment, in which event
6  summary judgment will be granted in Defendants' favor.  If AntiCancer elects to amend its PICs, it
7  shall reimburse Defendants on the same date that it serves its amended PICs, and **SHALL FILE** a
8  notice of said reimbursement with the Court.

## CONCLUSION

10  For the reasons stated above, the Court finds that AntiCancer's PICs are insufficient, but
11  that summary judgment is nevertheless be **DENIED** at this early stage.  Instead, the Court
12  conditionally **GRANTS** AntiCancer an opportunity to supplement its PICs, subject to the
13  mitigating conditions outlined above.

14  It is further **ORDERED** that all pending deadlines in this case are **STAYED**.  Within
15  <u>fourteen days</u> of the date AntiCancer makes its election, the parties **SHALL MEET AND**
16  **CONFER** and **SHALL SUBMIT** a joint proposal for a revised schedule.  This matter is
17  **HEREBY SET** for a status hearing on <u>Friday, July 20, at 3:00p.m.</u>
18  **IT IS SO ORDERED**.

20  DATED:  June 1, 2012

21  *Janis L. Sammartino*
    Honorable Janis L. Sammartino
22  United States District Judge

---

[11] The Court notes that CrownBio only joined in the motion via a notice and did not prepare any of its own briefs, and that counsel appeared telephonically at the hearing.  CrownBio thus indicated at oral argument that any reimbursement request with regard to the preparation of the motion would be "minimal," and that the request would otherwise be limited to the costs and fees associated with attending the May 31, 2012, hearing telephonically.