1                 THE UNITED STATES DISTRICT COURT
                FOR THE SOUTHERN DISTRICT OF CALIFORNIA
2

3                   HONORABLE JANIS L. SAMMARTINO
                UNITED STATES DISTRICT JUDGE PRESIDING
4

5        ------------------------------------------------------------

6    ANTICANCER, INC., A CALIFORNIA )
     CORPORATION,                    )
7                                    )
                    PLAINTIFF,       )
8                                    )
     VS.                            )   NO. 11-CV-0107-JLS
9                                    )
     PFIZER, INC., A DELAWARE        )
10   CORPORATION; CROWN BIOSCIENCE, )
     A CALIFORNIA CORPORATION, AND   )
11   DOES 1 - 10,                    )
                                     )
12                  DEFENDANTS.      )
     ------------------------------------------------------------
13

14                        MOTION HEARING

15       ------------------------------------------------------------

16

17

18             REPORTER'S TRANSCRIPT OF PROCEEDINGS
                        MAY 31, 2012
19                   SAN DIEGO, CALIFORNIA

20

21

22             GAYLE WAKEFIELD, RPR, CRR
                   OFFICIAL COURT REPORTER
23               UNITED STATES COURTHOUSE
                940 FRONT STREET, ROOM 3132
24           SAN DIEGO, CALIFORNIA  92101-8900
                    PH:  619-239-0652
25               WAKEFIELDGAYLE@GMAIL.COM

1

```
 1      APPEARANCES:

 2

 3      FOR THE PLAINTIFF:          MATT VALENTI
                                    ANTICANCER, INC.
                                    7917 OSTROW STREET
 4                                  SAN DIEGO, CA  92111

 5

 6

 7      FOR THE DEFENDANT:          RICHARD DE BODO
        PFIZER                      DLA PIPER LLP
                                    2000 AVENUE OF THE STARS
 8                                  SUITE 400, NORTH TOWER
                                    LOS ANGELES, CA  90067
 9

10

11      FOR THE DEFENDANT:          J. JAMES LI
        CROWN BIOSCIENCE            LI LAW INC.
                                    5050 EL CAMINO REAL, SUITE 200
12                                  LOS ALTOS, CA  94022

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1      MAY 31, 2012

 2                          AFTERNOON SESSION

 3              THE CLERK:  NUMBER ONE ON THE CALENDAR, 11-CV-0107,

 4      ANTICANCER VS. PFIZER, FOR MOTION HEARING.

 5              THE COURT:  GOOD MORNING, COUNSEL.  COULD I HAVE

 6      APPEARANCES, PLEASE.

 7              MR. VALENTI:  GOOD MORNING, YOUR HONOR, MATT VALENTI ON

 8      BEHALF OF ANTICANCER, INCORPORATED, AND I HAVE WITH ME DR.

 9      ROBERT M. HOFFMAN, PRESIDENT AND CEO.

10              THE COURT:  GOOD MORNING, SIR.

11              DR. HOFFMAN:  GOOD MORNING, YOUR HONOR.

12              MR. LI:  GOOD MORNING, YOUR HONOR --

13              THE COURT:  I'M GOING TO TAKE THE APPEARANCES HERE IN

14      COURT AND THEN GO TO THOSE OF YOU WHO ARE APPEARING

15      TELEPHONICALLY.

16              MR. LI:  ALL RIGHT.

17              MR. DE BODO:  GOOD MORNING, YOUR HONOR, RICHARD DE

18      BODO, OF DLA PIPER, REPRESENTING PFIZER, AND WITH ME IS JEFF

19      RENNECKER OF PFIZER.

20              THE COURT:  THANK YOU.  GOOD MORNING.  NOW APPEARING

21      TELEPHONICALLY.

22              MR. LI:  GOOD MORNING, YOUR HONOR, JIM LI FOR DEFENDANT

23      CROWNBIO.

24              THE COURT:  THANK YOU.  MR. LI, IF AT ANY TIME YOU

25      CAN'T HEAR US, PLEASE LET US KNOW.
```

1          MR. LI:  THANK YOU.

2          THE COURT:  YOU'RE WELCOME.  I'M GOING TO GIVE A

3   TENTATIVE RULING IN THIS MATTER, AND I'VE GOT SOME QUESTIONS,

4   AND THEN I'LL HEAR FROM EVERYBODY ON ANYTHING ELSE YOU WOULD

5   LIKE TO TELL THE COURT.

6          CAN YOU HEAR ME ALL RIGHT, MR. LI?

7          MR. LI:  YES.

8          THE COURT:  PRESENTLY BEFORE THE COURT ARE PFIZER'S

9   MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT BASED ON

10  DEFECTIVE INFRINGEMENT CONTENTIONS, WHICH CROWNBIO JOINS IN

11  PART, AND CROWNBIO'S MOTION FOR JUDGMENT ON THE PLEADING, WHICH

12  PFIZER JOINS.  ALSO BEFORE THE COURT ARE THE ASSOCIATED

13  OPPOSITIONS AND REPLIES, AND THE PARTIES' SUPPLEMENTAL BRIEFS.

14  HAVING CONSIDERED THE PARTIES' ARGUMENTS AND THE LAW, THE COURT

15  HAS TENTATIVE RULINGS ON BOTH MOTIONS, AND HAS PREPARED

16  QUESTIONS FOR THE PARTIES.

17          TURNING FIRST TO PFIZER'S MOTION FOR SUMMARY JUDGMENT,

18  THE COURT IS TENTATIVELY INCLINED TO GRANT IN PART AND DENY IN

19  PART THE MOTION.  THE COURT GRANTS SUMMARY JUDGMENT AS TO THE

20  '812 PATENT BECAUSE ANTICANCER DOES NOT OPPOSE THE MOTION FOR

21  SUMMARY JUDGMENT ON THIS BASIS AND BECAUSE THE '812 PATENT IS

22  UNENFORCEABLE HAVING BEEN SURRENDERED UPON THE ISSUANCE OF THE

23  '337 REISSUE PATENT.

24          AS TO THE '159 PATENT AND THE '337 REISSUE PATENT, THE

25  COURT FINDS THAT ANTICANCER'S PRELIMINARY INFRINGEMENT

1       CONTENTIONS ARE INSUFFICIENT TO COMPLY WITH PATENT LOCAL RULE

2       3.1.  THE SOUTHERN DISTRICT'S LOCAL PATENT RULES REQUIRE

3       PARTIES TO STATE WITH SPECIFICITY THEIR THEORIES OF

4       INFRINGEMENT, AND TO DO SO EARLY ON IN THE LITIGATION.  THIS

5       REQUIRES THAT THE PICS CONTAIN SUFFICIENT SPECIFICITY TO

6       PROVIDE DEFENDANTS WITH NOTICE OF INFRINGEMENT BEYOND THAT

7       WHICH IS PROVIDED BY THE MERE LANGUAGE OF THE PATENTS

8       THEMSELVES, BUT NEED NOT BE SO DETAILED AS TO TRANSFORM THE

9       PICS INTO A FORUM FOR THE LITIGATION OF THE SUBSTANTIVE ISSUES.

10      ANTICANCER'S PRELIMINARY INFRINGEMENT CONTENTIONS FAIL TO MEET

11      THIS STANDARD.

12              AS TO THE PROMOTER MONITORING ELEMENT OF THE '159

13      PATENT, THE COURT INCLUDES THAT THE PICS INSUFFICIENTLY SET

14      FORTH HOW PFIZER' ALLEGEDLY FRINGING CONDUCT SATISFIES THIS

15      ELEMENT.  THE PICS CITE TO A SINGLE SENTENCE AND FIGURE FROM

16      THE PFIZER PAPER WITHOUT PROVIDING ANY EXPLANATION FOR HOW LONG

17      THESE CITATION -- CITATIONS MAP ON TO THE CLAIM LANGUAGE.

18      ANTICANCER NEEDS TO CONNECT THE DOTS FOR HOW PFIZER'S

19      RESEARCH -- AS DETAILED IN THE PAPER -- READS ON THE ASSERTED

20      CLAIM LANGUAGE.  EVEN AT THIS EARLY STAGE, AS EVIDENCED BY THE

21      ARGUMENTS RAISED IN THE OPPOSITION BRIEF, ANTICANCER IS CAPABLE

22      OF THIS MUCH.

23              THE COURT LIKEWISE FINDS THAT ANTICANCER'S PRELIMINARY

24      INFRINGEMENT CONTENTIONS FAIL TO ESTABLISH WITH SUFFICIENT

25      SPECIFICITY THAT PFIZER PRACTICED THE DELIVERING CELLS ELEMENT

OF THE '159 PATENT.  ANTICANCER AGAIN GENERALLY POINTS TO A FIGURE AND A PORTION OF THE PAPER'S TEXT, WITHOUT ANY ADDITIONAL EXPLANATION FOR HOW PFIZER'S CONDUCT SATISFIES THIS ELEMENT.

ANTICANCER'S THEORY OF INFRINGEMENT MIGHT BE INFERRED IS NOT ENOUGH.  THE POINT OF PICS IS NOT TO IMPLY HOW PLAINTIFF CONTENDS THE DEFENDANT IS INFRINGING ITS PATENT, RATHER THEY ARE DESIGNED FOR A PLAINTIFF TO STATE WITH SPECIFICITY ITS CONTENTIONS OF INFRINGEMENT.

TO THAT END, THE CONNECTION BETWEEN THE CLAIMED LANGUAGE AND PFIZER CONDUCT THAT ANTICANCER MAKES IN ITS OPPOSITION BRIEF MUST BE SET FORTH IN THE PRELIMINARY INFRINGEMENT CONTENTIONS, EVEN IF THEY ARE BASIC SCIENTIFIC CONCEPTS THAT ARE GENERALLY KNOWN OR PUBLICLY AVAILABLE.

FINALLY, THE COURT ALSO FINDS THAT THE PRELIMINARY INFRINGEMENT CONTENTIONS ARE INSUFFICIENT WITH REGARD TO THE METASTASIS TO A SECOND SITE ELEMENT OF THE '337 REISSUE PATENT. ANTICANCER'S BARE CITATIONS TO THE TEXT OF THE PFIZER/CROWNBIO POSTER ARE INSUFFICIENT TO COMPLY WITH PATENT LOCAL RULE 3.1. EVEN CONSIDERING THE POINTS RAISED IN ANTICANCER'S OPPOSITION BRIEF, ANTICANCER HAS LEFT OUT THE ESSENTIAL CONNECTION BETWEEN THE CLAIM LANGUAGE AND THE ALLEGEDLY INFRINGING ACTS, NAMELY, HOW THE GROWTH OF THE TUMOR AT THE PRIMARY SITE PROVIDES DIRECT EVIDENCE THAT THE MICE WERE SUFFICIENTLY IMMUNE DEFICIENT TO ALLOW FOR METASTASIS TO A SECONDARY SITE.  BY SKIPPING THIS

1    ESSENTIAL CONNECTION, ANTICANCER LEAVES DEFENDANTS AND THE

2    COURT GUESSING HOW THE PATENT WAS ALLEGEDLY INFRINGED.

3         HAVING DETERMINED THAT THE PICS ARE INSUFFICIENT, THE

4    COURT NEXT CONSIDERS WHAT THE EFFECT OF THIS FAILURE OUGHT TO

5    BE.  HAVING REVIEWED THE PARTIES' SUPPLEMENTAL BRIEFING, AND

6    THOROUGHLY CONSIDERED THE ISSUE, THE COURT IS TENTATIVELY

7    INCLINED TO DENY THE MOTION FOR SUMMARY JUDGMENT, AND INSTEAD

8    TO CONDITIONALLY GRANT ANTICANCER AN OPPORTUNITY TO AMEND THEIR

9    PRELIMINARY INFRINGEMENT CONTENTIONS.

10        THE COURT BELIEVES THAT IT IS TOO EARLY IN THIS LAWSUIT

11   TO DISPOSE OF ANTICANCER'S CASE FOR ITS FAILURE TO COMPLY WITH

12   THE LOCAL RULE, BUT TOO LATE IN THE LAWSUIT TO ALLOW ANTICANCER

13   TO CURE ITS DEFICIENCY WITHOUT MITIGATING CONDITIONS.

14   ACCORDINGLY, THE COURT IS INCLINED TO PERMIT ANTICANCER TO

15   AMEND ITS PRELIMINARY INFRINGEMENT CONTENTIONS, BUT ONLY ON THE

16   CONDITION THAT IT REIMBURSE PFIZER AND CROWNBIO FOR THE

17   REASONABLE COSTS AND ATTORNEYS' FEES INCURRED IN LITIGATING

18   THIS MOTION.

19        THE COURT WOULD LIKE THE PARTIES TO COMMENT ON THIS

20   PROPOSED REMEDY, AND I HAVE SOME QUESTIONS TO ASK YOU ABOUT

21   THAT.

22        NOW I'M GOING TO TURN TO CROWNBIO'S MOTION FOR JUDGMENT

23   ON THE PLEADING.  THE COURT IS TENTATIVELY INCLINED TO GRANT

24   THE MOTION, BUT TO PERMIT ANTICANCER TO FILE AN AMENDED

25   COMPLAINT.  CROWNBIO ARGUES THAT ANTICANCER HAS NOT STATED A

1    CLAIM PURSUANT TO 35 U.S.C. 271(G) BECAUSE IT HAS NOT ALLEGED

2    ANY FACTS SHOWING THAT DEFENDANTS IMPORTED INTO THE UNITED

3    STATES THE PATENTED NUDE MOUSE MODELS THAT ARE MADE BY THE

4    PATENTED PROCESS OF THE '337 REISSUE PATENT.  ON THE BASIS OF

5    THE PLEADINGS ALONE, THE COURT IS TENTATIVELY INCLINED TO

6    AGREE.  NONE OF ANTICANCER'S FACTUAL ALLEGATIONS STATE THAT

7    DEFENDANTS IMPORTED NUDE MOUSE MODELS, NOR DO THE FACTS AS PLED

8    SUPPORT A REASONABLE INFERENCE OF SUCH INFRINGING ACTIVITY.

9         THE COURT'S TENTATIVE RULING IS UNCHANGED BY THE

10   ALLEGATIONS ANTICANCER RAISES FOR THE FIRST TIME IN ITS

11   OPPOSITION BRIEF.  ANTICANCER ASSERTS THAT DEFENDANTS ARE

12   LIABLE FOR INFRINGEMENT UNDER SECTION 271(G) BECAUSE THEY

13   UTILIZED THE PATENTED PROCESS OF CREATING A NUDE MOUSE MODEL IN

14   ORDER TO TEST AND MANUFACTURE PFIZER'S CANCER TREATMENT DRUG,

15   WHICH PFIZER MARKETS AND SELLS IN THE UNITED STATES, BUT THE

16   FEDERAL CIRCUIT ALREADY FORECLOSED THIS EXACT ARGUMENT IN THE

17   *BAYER* CASE.  ANTICANCER ATTEMPTS TO DISTINGUISH -- ANTICANCER'S

18   ATTEMPTS TO DISTINGUISH *BAYER* ARE UNPERSUASIVE, AND ITS

19   POLICIES CONSIDERATIONS, HOWEVER VALID, CANNOT SWAY THE COURT

20   AWAY FROM ADHERING TO *BAYER*.

21        THE PARTIES ARE REMINDED THIS IS ONLY THE COURT'S

22   TENTATIVE AND IS SUBJECT TO CHANGE IN LIGHT OF THE ARGUMENTS

23   PRESENTED TODAY.  I HAVE QUESTIONS FOR EVERYONE, AND I WOULD

24   ASK YOU TO PAY CLOSE ATTENTION AND JUST ANSWER THE QUESTION I

25   POSE BECAUSE I WILL GIVE YOU SOME TIME AT THE CONCLUSION OF

1        QUESTIONS TO TELL THE COURT ANYTHING YOU WOULD LIKE TO TELL ME.

2            I WOULD LIKE TO START WITH ANTICANCER, IF YOU WOULD

3        TAKE THE PODIUM, COUNSEL.

4            MR. VALENTI:  THANK YOU, YOUR HONOR.

5            THE COURT:  COUNSEL, DO YOU CONCEDE THAT SUMMARY

6        JUDGMENT SHOULD BE ENTERED IN DEFENDANT'S FAVOR ON THE '812

7        PATENT?

8            MR. VALENTI:  YES, WE DO CONCEDE THAT, YOUR HONOR.

9            THE COURT:  OKAY.  YOU'VE HEARD THE COURT'S COMMENTS.

10       IS THERE ANYTHING THAT YOU WOULD LIKE TO ADD IN SUPPORT OF YOUR

11       ARGUMENT THAT THE PRELIMINARY INFRINGEMENT CONTENTIONS ARE

12       SUFFICIENT, AND IF YOU WOULD TAILOR YOUR ARGUMENT ONLY TO

13       INFORMATION ACTUALLY PROVIDED IN THE INFRINGEMENT CONTENTIONS

14       AND HOW THAT INFORMATION IS SUFFICIENT TO COMPLY WITH 3.1, AS

15       ANYTHING OTHER THAN THAT INFORMATION WOULD BE EXTRINSIC TO THE

16       PICS AND CAN'T BE USED TO BOLSTER THEIR SUFFICIENCY.  SO GO

17       AHEAD, SIR.

18           MR. VALENTI:  SURE.  THANK YOU VERY MUCH, YOUR HONOR,

19       AND THANK YOU FOR YOUR TENTATIVE RULING.

20           FIRST OF ALL, I THINK ONE THING THE COURT SHOULD

21       CONSIDER IS THIS IDEA THAT CONCEPTS IN THE PICS WERE IMPLICIT

22       OR SHOULD HAVE BEEN UNDERSTOOD BECAUSE THEY WERE BASIC

23       SCIENTIFIC CONCEPTS, AND WE STAND BY THAT ARGUMENT.  PERHAPS A

24       MORE APPROPRIATE WORD TO HAVE USED WOULD BE THE WORD INHERENT.

25       INHERENT CAN BE DEFINED AS EXISTING IN SOMETHING AS A PERMANENT

1   OR ESSENTIAL ATTRIBUTE, AND WE BELIEVE THAT THE --

2        THE COURT:  SO RATHER THAN IMPLIED, YOU'RE ASKING ME TO

3   -- YOU'RE SAYING IT'S INHERENT WITHIN WHAT'S SAID.

4        MR. VALENTI:  IT'S INHERENT, CORRECT, YOUR HONOR.

5        THE COURT:  OKAY.

6        MR. VALENTI:  THIS IS KIND OF A COLLOQUIAL EXAMPLE, BUT

7   IF YOU GAVE INSTRUCTIONS TO SOMEONE FOR MAKING A PIZZA AND YOU

8   SAID, "FIRST PUT THE TOMATO SAUCE ON THE DOUGH," WE ALL KNOW

9   THAT TOMATO SAUCE IS MADE WITH TOMATOES.  IN THIS INSTANCE, FOR

10  INSTANCE, DELIVERING CELLS IS A BASIC SCIENTIFIC CONCEPT THAT

11  YOU CANNOT HAVE A TRANSGENIC MOUSE WITHOUT AT SOME POINT

12  DELIVERING CELLS TO EITHER THE PARENT OR THE GRANDPARENT OF

13  THAT MOUSE.  SO DID WE IN THE PICS SPECIFICALLY STATE THAT THE

14  CELLS WERE DELIVERED BY PFIZER?  NO, BUT IT'S ANALOGOUS TO

15  SAYING THAT THE TOMATO SAUCE WAS PUT ON THE PIZZA, AND, OF

16  COURSE, THE TOMATO SAUCE WAS MADE WITH TOMATOES.

17       IN THIS CASE, THE TRANSGENIC MICE WERE CLEARLY BEING

18  USED BY PFIZER.  THERE'S NO DISPUTE THAT THESE MICE WERE

19  TRANSGENIC AND EXPRESSED GFP.  IT IS INHERENT IN THAT, IN A

20  TRANSGENIC MOUSE, THAT CELLS WERE DELIVERED.  IT'S A BASIC

21  SCIENTIFIC CONCEPT, WHICH WE FEEL THE PICS DIDN'T NEED TO

22  SPECIFY, JUST AS YOU WOULDN'T NEED TO SPECIFY THAT TOMATO SAUCE

23  IS MADE OUT OF TOMATOES.

24       SAME THING WITH PROMOTER MONITORING.  IF YOU'RE LOOKING

25  AT A TRANSGENIC MOUSE EXPRESSING GFP, YOU ARE SEEING -- YOU ARE

```
 1        MONITORING THE PROMOTER.  THERE'S NO OTHER WAY TO DO IT BECAUSE

 2        THE GENE THAT IS EXPRESSING THE GFP PROTEIN IS -- THE PROMOTER

 3        IS BEING SHOWN WHEN YOU'RE VIEWING THAT.  YOU ARE INTRINSICALLY

 4        MONITORING THE ACTIVITY OF THE PROMOTER WHEN YOU ARE IMAGING A

 5        MOUSE EXPRESSING GFP.  SO AGAIN WE THINK THAT THAT WAS

 6        SUFFICIENT IN THE PICS.  THE PICS SUFFICIENTLY EXPLAIN THAT.

 7             AND THEN FINALLY, ON THE ISSUE OF METASTASIS TO A

 8        SECOND SITE IN THE '337 PATENT, AGAIN, IT'S INHERENT THAT WHEN

 9        YOU IMPLANT A TUMOR FRAGMENT ONTO THE LIVER OF A NUDE MOUSE OR

10        A SUFFICIENTLY IMMUNOCOMPROMISED MOUSE THAT IS SUFFICIENT TO

11        ALLOW THE TUMOR TO METASTASIZE, AND THAT'S ALL THAT THE CLAIM

12        REQUIRES -- THAT'S ALL THAT THIS CLAIM ELEMENT REQUIRES.

13             IF YOU'LL BEAR WITH ME, I WOULD JUST LIKE TO QUOTE FROM

14        THE PATENT.  "THE MOUSE NEED TO HAVE SUFFICIENT

15        IMMUNODEFICIENCY TO ALLOW SAID TRANSPLANTED NEOPLASTIC TISSUE

16        TO GROW AT SAID PRIMARY SITE," AND IT IS INHERENT IN THE CROWN

17        ABSTRACT THAT THEY WERE USING AN IMMUNOCOMPROMISED MOUSE, THEY

18        IMPLANTED A TUMOR FRAGMENT, AND THAT WAS SUFFICIENT TO ALLOW

19        THAT TUMOR FRAGMENT TO METASTASIZE TO A SECOND SITE.  IT'S

20        INHERENT IN THAT.

21             THE COURT:  SO YOU THINK THAT THERE'S SUFFICIENT --

22        I'VE GOT TO THINK ABOUT THE DISTINCTION, IF I UNDERSTAND WHAT

23        YOU'RE SAYING.  OKAY, LET ME MOVE ON TO ANOTHER QUESTION,

24        COUNSEL.

25             MR. VALENTI:  SURE.
```

1      THE COURT:  YOU NEVER ASKED OR SOUGHT LEAVE TO AMEND

2   YOUR PRELIMINARY INFRINGEMENT CONTENTIONS, NOR HAVE YOU

3   INDICATED IN YOUR OPPOSITION THAT ANY AMENDMENT MIGHT BE

4   FRUITFUL.  NONETHELESS, IN LIGHT OF THE COURT'S TENTATIVE

5   RULING, WOULD YOU COMMENT ON WHETHER YOU COULD CURE THE

6   DEFICIENCIES NOTED IF GIVEN AN OPPORTUNITY TO AMEND?

7      MR. VALENTI:  CERTAINLY, YOUR HONOR.  IF THE COURT IS

8   INCLINED, AS THE TENTATIVE SUGGESTS, TO RULE THAT THE PICS WERE

9   INSUFFICIENT, I DO FEEL AS IF I HEARD FROM THE COURT THAT THE

10   ARGUMENTS WE MADE IN THE OPPOSITION BRIEFS PERHAPS AT LEAST

11   WERE SUFFICIENT TO CURE THE PICS.  WE MORE EXPLICITLY EXPLAIN

12   THAT THE TOMATO SAUCE WAS MADE FROM TOMATOES, AND WE COULD DO

13   THE SAME THING IN AN AMENDED PICS.

14      THE COURT:  I UNDERSTAND THAT YOUR FIRST AVENUE IS THAT

15   THIS IS ALL INHERENT AND I SHOULD TAKE ANOTHER LOOK AT IT,

16   WHICH I WILL DO AFTER TODAY, BUT YOU COULD GO FURTHER IF MY

17   TENTATIVE WERE TO HOLD.

18      MR. VALENTI:  CERTAINLY, YOUR HONOR, WE COULD AMEND THE

19   PICS AND ADD THAT EXTRA DETAIL, THAT EXTRA EXPLANATION, WHICH,

20   IF I MAY ADD, I THINK IT'S UNNECESSARY ONLY BECAUSE PFIZER IS A

21   VERY SOPHISTICATED COMPANY, WITH VERY SOPHISTICATED SCIENTISTS

22   AND LAWYERS.  WE BELIEVED ALL ALONG THAT WHEN THEY READ THE

23   PICS, WHEN THEY SAW THE EVIDENCE THEY KNEW THAT WE HAD STATED

24   WITH SPECIFICITY THAT THERE WAS INFRINGEMENT.  NEVERTHELESS,

25   THEY'VE KIND OF TAKEN THIS POSITION WHICH IS SEE NO EVIL, HEAR

1    NO EVIL, SPEAK NO EVIL, AND IF WE NEED TO MORE CLEARLY EXPLAIN

2    EXACTLY THE EVIL -- PARDON THE EXPRESSION -- THAT WAS

3    COMMITTED, WE'RE GLAD TO DO THAT, YOUR HONOR.

4         THE COURT:  I TOLD YOU THAT THE COURT WAS TENTATIVELY

5    INCLINED TO CONDITIONALLY GRANT YOU AN OPPORTUNITY TO AMEND THE

6    PICS ON THE CONDITION THAT YOU REIMBURSE FOR COSTS AND FEES IN

7    LITIGATING THE MOTION FOR SUMMARY JUDGMENT.  DO YOU WANT TO

8    COMMENT ON THAT, SIR.

9         MR. VALENTI:  I GUESS THE MOST I COULD SAY RIGHT NOW IS

10   THIS IS A NEW IDEA FOR US, AND SO I WOULD HAVE TO DISCUSS WITH

11   MY CLIENT WHETHER WE WOULD BE ABLE TO DO THAT, AND I GUESS A

12   LOT OF THAT WOULD DEPEND ON EXACTLY THE AMOUNTS THAT PFIZER

13   WOULD CLAIM THEY SPENT PURSUING THIS MOTION.  SO MY SHORTHAND

14   ANSWER IS, YOUR HONOR, WE APPRECIATE THE OPPORTUNITY, AND THE

15   ANSWER IS THAT IT DEPENDS.

16        THE COURT:  SO MY NEXT QUESTION, MAYBE YOU'RE NOT ABLE

17   TO ANSWER, BUT IF MY TENTATIVES STAND, I WONDERED IF YOU KNEW

18   AT THIS TIME WHETHER YOU WOULD BE INCLINED TO ACCEPT THE

19   CONSEQUENCES, AMEND, AND PAY WHATEVER CONSEQUENCES MIGHT BE OR

20   LET SUMMARY JUDGMENT GET GRANTED.  I APPRECIATE MAYBE YOU'RE

21   NOT ABLE TO ANSWER THAT NOW.

22        MR. VALENTI:  IF YOU LIKE, I COULD HAVE A SHORT

23   COLLOQUY WITH MY CLIENT AND GET YOU AT LEAST AN INDICATION OF

24   WHAT WE THINK WOULD BE OKAY.

25        THE COURT:  I'VE GOT QUESTIONS FOR THE OTHER SIDE ON

1          THE MSJ, AND THEN I'VE GOT QUESTIONS FOR BOTH SIDES ON JUDGMENT

2     ON THE PLEADINGS, SO, SURE, TAKE A MOMENT AND TALK TO DR.

3     HOFFMAN.

4          MR. VALENTI:  OKAY.  THANK YOU VERY MUCH, YOUR HONOR.

5          THE COURT:  AND WE'LL COME BACK TO THAT QUESTION.

6     (DISCUSSION HELD OFF THE RECORD.)

7          THE COURT:  I WOULD LIKE TO MOVE ON TO PFIZER'S SIDE.

8          MR. DE BODO:  GOOD MORNING, YOUR HONOR.

9          THE COURT:  GOOD MORNING, COUNSEL.

10         LET'S START WITH A WORD THAT COUNSEL BROUGHT UP AND HE

11    SAYS HE'S NOT REALLY MISSING ANYTHING BECAUSE I USED THE TERM

12    THAT I CAN'T IMPLY -- HE SAYS THIS IS INHERENT, WHICH GIVES ME

13    A LITTLE PAUSE.  HE SAYS THIS IS INHERENT IN THIS, SO COMMENT

14    ON THAT, IF YOU WOULD, AND THAT ARGUMENT.

15         MR. DE BODO:  CERTAINLY, YOUR HONOR.  I THINK THAT THE

16    ARGUMENT ABOUT INHERENCY IS A RED HERRING AND IT'S AN

17    INAPPROPRIATE ARGUMENT TO MAKE.  INHERENCY IS A DOCTRINE WHICH

18    IS USED IN CONNECTION WITH THE -- EXAMINATIONS OF PATENTS, AND

19    OCCASIONALLY PIECES OF PRIOR ART, TO ASK THE QUESTION WHAT IS

20    REALLY BEING SAID AND WHAT IS BEING COMMUNICATED IN THIS PATENT

21    OR IN THIS PIECE OF PRIOR ART, WRITTEN TO SCIENTISTS IN GENERAL

22    ABOUT WHAT'S -- WHAT'S BEING DESCRIBED.

23         HERE WE'RE TALKING, REMEMBER, ABOUT COURT REQUIRED

24    PRELIMINARY INFRINGEMENT CONTENTIONS, THE PICS.  THIS IS NOT --

25    THESE ARE NOT SCIENTIFIC DOCUMENTS THAT HAVE BEEN WRITTEN FOR

14

1    MULTIPLE UNKNOWN PURPOSES THAT MAY HAVE COME OUT OF HISTORY.

2    THESE -- THE PICS WERE WRITTEN SPECIFICALLY TO INFORM YOUR

3    OPPOSING LITIGANT WHAT YOUR CLAIMS ARE, AND TO POINT OUT

4    SPECIFICALLY WHY YOU STATE A VIABLE CLAIM, IF YOU DO, FOR

5    INFRINGEMENT.

6        HERE, THE PICS CLEARLY ESTABLISH THAT THE -- ANTICANCER

7    DOES NOT STATE A VIABLE CLAIM.  THEY HAVEN'T STATED A CLAIM,

8    AND, IN FACT, THE UNWILLINGNESS AND THE HESITANCY TO TRY TO

9    FILL IN THE GAPS I THINK REFLECTS NOT SIMPLY SORT OF A

10    GAMESMANSHIP BUT MORE OF A RECOGNITION THAT THESE PATENTS DON'T

11    COVER THE ACTIONS AND THE SCIENTIFIC ACTIVITY THAT THEY'RE

12    TARGETED AT.

13        INHERENCY -- IN OTHER WORDS, WE'RE NOT SUPPOSED TO, THE

14    COURT, LAWYERS FOR THE DEFENDANTS, AND SO FORTH, ARE NOT

15    SUPPOSED TO TRY TO DEVINE WHAT ANTICANCER'S INFRINGEMENT THEORY

16    IS.  THEY'RE SUPPOSED TO TELL US IN ABSOLUTELY EXPLICIT TERMS,

17    THEY'RE SUPPOSED TO SHOW, THE RULES ARE CLEAR ON THIS, WHERE IN

18    THE DOCUMENTS, WHERE IN THE INSTRUMENTALITIES, THE ASPECTS OF

19    THE PATENT ARE THAT ARE DESCRIBED IN THE CLAIMS, AND, AS WE I

20    THINK ESTABLISH NOW IN MULTIPLE ROUNDS OF BRIEFING, THEY

21    HAVEN'T DONE THAT.  THEY DON'T SEEM CAPABLE OF DOING THAT, AND

22    THAT'S BECAUSE THESE PATENTS REALLY DON'T COVER THE SCIENTIFIC

23    ACTIVITY DESCRIBED IN THE SINGLE POSTER AND THE SINGLE ARTICLE

24    THAT THEY'RE PREDICATING THEIR CASE ON.  AND SO I THINK

25    INHERENCY IS NOT REALLY AN APPLICABLE DOCTRINE HERE.

1          WE DON'T AGREE, OF COURSE, WITH THE CONCLUSIONS.  WE

2     RESPECTFULLY DISAGREE THAT THINGS ARE INHERENT.  SO EVEN IF WE

3     WERE TO MOVE BEYOND WHETHER IT'S AN APPROPRIATE ARGUMENT TO

4     MAKE, YOU KNOW, WE DON'T REALLY AGREE WITH THE STATEMENTS.

5          I MEAN, IF YOU READ DR. HOFFMAN'S STATEMENTS IN HIS

6     DECLARATION, THEY'RE QUITE EQUIVOCAL.  THEY'RE KIND OF VERY

7     LAWYER -- IT'S WRITTEN BY A LAWYER, IT SEEMS, MORE THAN BY A

8     SCIENTIST.  I MEAN, THE WORDS THAT ARE USED ARE THINGS LIKE

9     "PROBABLY," AND OFTEN IN THESE TYPES OF SITUATIONS YOU HAVE

10    THIS TYPE OF ACTIVITY.  THAT'S NOT THE BASIS TO PROVE

11    INFRINGEMENT.  ULTIMATELY, THE BURDEN IS ON ANTICANCER TO SAY

12    THAT THE ACTIVITY DESCRIBED IN THIS ARTICLE AND THIS POSTER

13    INFRINGE THE PATENTS AND MET EACH AND EVERY ELEMENT, AND SO IF

14    YOU'RE TALKING ABOUT THE MONITORING PROMOTER, TO SORT OF SAY A

15    LOT OF TIMES THERE'S A PROMOTER AND THIS TYPE OF DESCRIPTION

16    SEEMS TO PERHAPS INDICATE OR PROBABLY INDICATES IT OR PROBABLY

17    DELIVERED CELLS, I MEAN, THIS TYPE OF LANGUAGE DOESN'T PROVE A

18    CASE.

19         IF WE WERE LOOKING AT THIS, AND I WOULD URGE THE COURT

20    TO TAKE A LOOK AT THIS, AFTER ALL, THIS IS A SUMMARY JUDGMENT

21    MOTION, AND IF YOU SIMPLY, YOU KNOW, APPLY THE STANDARD TYPE OF

22    SUMMARY JUDGMENT ANALYSIS OR A STANDARD TRIAL TYPE ANALYSIS TO

23    WHAT DR. HOFFMAN'S ARGUMENTS ARE, EVEN IF WE WERE TO ACCEPT

24    THEM COMING AS THEY DID LATE AND INAPPROPRIATELY, AFTER THE

25    PICS WERE DUE AND SUBMITTED, THEY DO NOT ESTABLISH

1    INFRINGEMENT, AND SO LOOKING AT THIS AS A SUMMARY JUDGMENT

2    MOTION, SUMMARY JUDGMENT SHOULD BE GRANTED IN THIS CASE.

3         THE COURT:  WELL, COUNSEL, OTHER THAN *CRI* AND

4    *CARESTREAM*, AND ANY OTHER CASE INVOLVING ANTICANCER, CAN YOU

5    CITE TO ANOTHER CIRCUMSTANCE IN WHICH A DISTRICT COURT GRANTED

6    SUMMARY JUDGMENT FOR DEFECTIVE INFRINGEMENT CONTENTIONS WHERE

7    THE COURT HAD NOT YET CONSIDERED WHETHER TO GRANT LEAVE TO

8    AMEND?  NOW, I KNOW THE CASES INVOLVING ANTICANCER, SO TAKING

9    THOSE ASIDE, I'M OBVIOUSLY FAMILIAR WITH THAT, ANYTHING ELSE

10   THAT SHOWS THAT PRIOR TO AN OPPORTUNITY TO AMEND?

11        MR. DE BODO:  WELL, YOUR HONOR, THE WAY I LOOK AT IT

12   PROCEDURALLY IS THAT THIS -- THE ANSWER IS OTHER THAN THOSE --

13   YOU'RE ASKING OTHER THAN THE TWO CASES, PUT THEM ASIDE?

14        THE COURT:  TAKE THOSE OUT.

15        MR. DE BODO:  I DON'T THINK WE HAVE A CASE OTHER THAN

16   THOSE TWO, BUT I THINK THE POINT IS IF WE LOOK AT SUMMARY

17   JUDGMENT MOTIONS -- SUMMARY JUDGMENT IS RIPE AT THIS POINT IN

18   THE CASE.  WE'RE ENTITLED TO BRING A SUMMARY JUDGMENT MOTION,

19   AND ANTICANCER UNDERSTOOD THAT WE WERE ENTITLED TO BRING A

20   SUMMARY JUDGMENT, AND THEY DIDN'T COME TO THE COURT AND SAY,

21   "WE WOULD LIKE TO AMEND OUR CONTENTIONS.  WE WANT LEAVE TO

22   AMEND."  EVEN WHEN THE COURT INVITED A REQUEST, THEY DIDN'T

23   MAKE IT, AND THEY SAID, "NO, WE'LL STICK WITH IT.  WE'RE HAPPY

24   TO GO WITH OUR CONTENTIONS."

25        THEY DON'T, OF COURSE, HAVE GOOD CAUSE TO AMEND.  I

1    THINK THERE THE LAW IS PRETTY STRONG FOR US IN THIS DISTRICT

2    AND IN OTHER DISTRICTS THAT THERE'S NO RIGHT TO AMEND THESE

3    CONTENTIONS, AND SO THEY'RE KIND OF STUCK, IF ONE APPLIES THE

4    SUMMARY JUDGMENT DOCTRINE, THAT WE NOW LOOK AT THIS AS A

5    SUMMARY JUDGMENT CASE, AND WE LOOK AT WHAT EVIDENCE THEY'RE

6    GOING TO BE PERMITTED TO INTRODUCE, BECAUSE THEY'RE BOUND BY

7    THEIR PICS, THEN THEY ARE LIMITED, IT WOULD SEEM, BY THEIR

8    PICS, AND THINGS LIKE DR. HOFFMAN'S DECLARATION, AND SO FORTH,

9    YOU KNOW, SHOULD NOT BE CONSIDERED UNDER THE RULES IN THIS

10   DISTRICT BECAUSE ULTIMATELY THEY HAVEN'T COME IN AND SHOWN GOOD

11   CAUSE.  THEY HAVEN'T ASKED -- TODAY MAY BE THE FIRST REQUEST TO

12   POTENTIALLY, IF IT WAS A REQUEST, TO AMEND THEIR PICS, BUT

13   THEY'VE NOT, YOU KNOW, MADE A GOOD CAUSE SHOWING AS THE

14   DISTRICT REQUIRES.

15        THEY SHOULD BE PRECLUDED FROM MAKING THAT TYPE OF

16   AMENDMENT AND CHANGE BECAUSE UNDER THE RULES IN THIS DISTRICT

17   THEY'RE BOUND BY THE SUBMISSION AND BY THEIR PICS AND BY THEIR

18   THEORIES THAT THEY OFFERED IN THEIR ORIGINAL CONTENTIONS, AND

19   THEY DON'T INCLUDE THINGS LIKE DR. HOFFMAN'S, YOU KNOW, FILLING

20   IN THE GAPS.

21        THE COURT:  LET ME ASK YOU, COUNSEL, ABOUT THE

22   TENTATIVE THAT I GAVE YOU TO CONDITIONALLY GRANT AN OPPORTUNITY

23   TO ANTICANCER TO AMEND ON THE CONDITION IT REIMBURSE FOR THE

24   COSTS ASSOCIATED WITH LITIGATING THIS MOTION.  COMMENT ON THAT,

25   IF YOU WOULD, SIR.

1          MR. DE BODO:  SURE.  WELL, YOUR HONOR, I APPRECIATE

2     THAT, AND SO I'LL JUST SAY INITIALLY I THINK THE ONLY WAY THAT

3     ANTICANCER SHOULD BE PERMITTED TO MAKE ANY AMENDMENT AT THIS

4     POINT WOULD BE TO REIMBURSE THE COSTS, AND I WOULD SAY THE

5     COSTS OF THE MOTION.  I WOULD ALSO SAY THE COSTS OF OUR

6     INVALIDITY CONTENTIONS, WHICH WERE WORKED ON AND SUBMITTED IN

7     THE ABSENCE OF INFORMATION.

8          THE COURT:  AND YOU ALSO INCLUDE THE CLAIM

9     CONSTRUCTION.

10         MR. DE BODO:  CLAIM CONSTRUCTION, YES.

11         THE COURT:  YOU JUST ANTICIPATED MY NEXT QUESTION.  WHY

12    SHOULD ANTICANCER BE FORCED TO PAY FOR ALL OF THAT, SIR?

13         MR. DE BODO:  BECAUSE THE STRUCTURE OF THE RULES IN

14    THIS DISTRICT ARE THAT ANTICANCER CAME IN WITH THEIR CLAIMS.

15    THEY MADE THEIR ASSERTIONS, INFRINGEMENT CONTENTIONS COME FIRST

16    IN ORDER.  WE ARE ENTITLED TO READ THOSE INFRINGEMENT

17    CONTENTIONS, AND TO INTERPRET THEM, AND TO DETERMINE WHAT PRIOR

18    ART WOULD BE RESPONSIVE BASED ON THE READING OF THE CLAIMS THAT

19    ANTICANCER'S PROVIDED.

20         THE COURT:  WOULDN'T YOU HAVE HAD TO PREPARE THOSE IN

21    ANY EVENT?

22         MR. DE BODO:  WELL, WE'RE GOING TO HAVE TO DO WORK OVER

23    AGAIN BECAUSE THEY'RE GOING TO NOW MODIFY THEIR CLAIMS.  IN

24    OTHER WORDS, WHAT THEY SAID IN NOVEMBER, WHEN THEY SUBMITTED

25    THEIR FIRST INFRINGEMENT CONTENTIONS, LED US DOWN A PARTICULAR

1    PATH.  THEY'RE NOW CHANGING, IN SOME RESPECTS, THEIR ANALYSIS,

2    SO IT MAY NOT BE A 100 PERCENT THING.

3         THE COURT:  HOW WOULD YOU EVER CALCULATE THAT, COUNSEL?

4    HOW WOULD YOU EVER ASSOCIATE THE ADDITIONAL COSTS TO RE-PREPARE

5    THOSE THINGS AS RESULTING FROM THE INITIAL INSUFFICIENT

6    CONTENTIONS?

7         MR. DE BODO:  WELL, I THINK UNDER THESE CIRCUMSTANCES,

8    I MEAN, THERE DOESN'T SEEM TO BE A LOT OF EXCUSE OR EXPLANATION

9    OFFERED FOR THE INADEQUATE CONTENTIONS, AND IT SEEMS THAT AS

10   BETWEEN ANTICANCER -- REMEMBER, PUTTING IT INTO CONTEXT,

11   ANTICANCER'S LITIGATED THESE PATENTS MULTIPLE TIMES, AS THE

12   COURT KNOWS, AND IT'S VERY FAMILIAR WITH THE PATENTS.  IT

13   SHOULD BE ABLE TO PROVIDE INFRINGEMENT CONTENTIONS THAT ARE,

14   YOU KNOW, CALIBRATED, PRECISE AND INFORMATIVE.  IN NOT DOING

15   THAT NOW, AFTER HAVING LITIGATED MANY CASES, AND HAVING HAD

16   SUMMARY JUDGMENT GRANTED SEVERAL TIMES, IT'S REALLY -- I MEAN,

17   AS BETWEEN PFIZER, TRYING IN GOOD FAITH TO INTERPRET WHAT'S

18   BEING SAID, AND ANTICANCER, CERTAINLY ANTICANCER SHOULD PAY

19   SOME SUBSTANTIAL PORTION OF THE WORK THAT NEEDS TO BE DONE IN

20   TERMS OF THE INVALIDITY CONTENTIONS AND THE MARKMAN CLAIM

21   CONSTRUCTION CONTENTIONS.

22         AGAIN, I THINK THE COURT -- IF THE COURT WANTS OUR

23   ASSESSMENT, WE WOULD BE HAPPY TO MAKE A -- TO SORT OF GIVE AN

24   ESTIMATE AND THEN PERHAPS CALIBRATE IT, DEPENDING ON HOW MUCH

25   OF THE WORK WILL HAVE TO BE REDONE.  WE WOULD BE HAPPY TO DO

1       THAT IF THAT WOULD BE HELPFUL.

2              I WOULD ALSO SUGGEST THAT THERE SHOULD BE AN ASSESSMENT

3       OF FEES BASED ON THE '812 PATENT BECAUSE, YOU KNOW, THE LAW IS

4       PRETTY CLEAR ON THE '812 PATENT THAT, YOU KNOW, IT'S NO LONGER

5       A VALID PATENT TO BE ASSERTED, AND EVEN AFTER WE BROUGHT THIS

6       TO ANTICANCER'S ATTENTION IN OUR FIRST PLEADING, ANTICANCER HAS

7       CONTINUED TO ASSERT THE '812 PATENT AND, FOR EXAMPLE, IN

8       *MARKMAN* CLAIMS, AND SO FORTH, AND SUBMISSIONS, THEY'VE NOW

9       CONTACTED US AND SAID THE '812 IS OUT OF THE CASE IN ANY

10      RESPECT, SO WE CONTINUE TO BE BURDENED BY THE '812 PATENT AND

11      HAD TO CONSIDER THESE ALLEGATIONS AS WELL.

12             SO I THINK ALL OF THOSE THINGS WOULD BE APPROPRIATE FOR

13      THE COURT TO ASSESS BEFORE CONSIDERING ALLOWING ANTICANCER TO

14      AMEND, BUT I DO BELIEVE THAT SINCE THIS WAS STYLED AS A SUMMARY

15      JUDGMENT MOTION, SINCE WE MADE THOSE SUBMISSIONS, SINCE

16      ANTICANCER TREATED IT AS A SUMMARY JUDGMENT MOTION AND DID NOT

17      ASK TO AMEND OR BE RELIEVED, AND SINCE THEY MADE A SUBMISSION

18      FROM AN EXPERT, I THINK THAT GIVEN THE SHOWING, AND THE LACK OF

19      SHOWING BY THE EXPERT, WE THINK THAT SUMMARY JUDGMENT SHOULD BE

20      GRANTED.

21             THE COURT:  I APPRECIATE THAT.

22             I HAVE A QUESTION FOR MR. LI ON THIS MOTION, MR. LI,

23      CAN YOU HEAR ME?

24             MR. LI:  YES, YOUR HONOR.

25             THE COURT:  MR. LI, THE COURT NOTES THAT CROWNBIO ONLY

1    JOINED IN PFIZER'S MOTION AND DID NOT PREPARE ITS OWN BRIEF IN

2    SUPPORT OF THIS PARTICULAR MOTION.  ASSUMING THE COURT'S

3    TENTATIVE RULING STANDS, WOULD CROWNBIO BE SEEKING ANY

4    REIMBURSEMENT OF COSTS BEYOND THE COST OF ATTENDING TODAY'S

5    HEARING?

6         MR. LI:  PROBABLY NOT.  WE'VE SPENT VERY LITTLE TIME.

7    WE JUST FILED A ONE-LINER JOINDER, AND IF WE CAN GET THE COSTS

8    OF TODAY'S HEARING, THAT WOULD BE GOOD, YEAH.

9         THE COURT:  SO GO BACK -- SO BASICALLY YOU WOULDN'T BE

10   SUBMITTING ANYTHING -- I JUST HAD PROBLEMS HEARING YOU AT THE

11   END, SIR, STATE THAT AGAIN.

12        MR. LI:  I'M SORRY.  YES, YOU'RE RIGHT, WE DID NOT

13   SPEND A LOT OF TIME PREPARING THE JOINDER.  IF WE SUBMIT

14   ANYTHING, IT WILL BE REALLY MINIMUM AMOUNT.

15        THE COURT:  OKAY.

16        MR. LI:  BUT WE WOULD LIKE TO GET REIMBURSED FOR OUR

17   FEES TO ATTEND TODAY'S HEARING.

18        THE COURT:  SO FEES FOR TODAY, BUT EVERYTHING ELSE

19   WOULD BE VERY MINIMAL.

20        MR. LI:  CORRECT.

21        THE COURT:  AS EVERYBODY OBVIOUSLY KNOWS, I GRANTED

22   YOUR REQUEST TO APPEAR TELEPHONICALLY TODAY, SO THAT'S FINE.

23   THANK YOU, MR. LI.

24        I WOULD NOW LIKE TO TURN TO THE MOTION FOR JUDGMENT ON

25   THE PLEADINGS, AND I HAVE SOME QUESTIONS FOR ANTICANCER ON

1    THAT, COUNSEL.

2         MR. VALENTI:  THANK YOU, YOUR HONOR.

3         THE COURT:  SO DON'T LEAVE US, MR. LI.  MR. LI?

4         MR. LI:  YES, I'M HERE.

5         THE COURT:  MY FIRST QUESTION IS THIS, CAN YOU POINT TO

6    ANY ALLEGATIONS CONTAINED IN THE FOUR CORNERS OF THE FIRST

7    AMENDED COMPLAINT AS TO YOUR 271(G) THEORY OF INFRINGEMENT,

8    COUNSEL?

9         MR. VALENTI:  SURE.  IF YOU WOULD PERMIT ME A MOMENT,

10   YOUR HONOR.

11        MOST OF ALL IS THE EVIDENCE THAT WE SUBMITTED IN THE

12   COMPLAINT, WHICH IS THE ABSTRACT OR THE POSTER THAT WAS JOINTLY

13   DONE BY PFIZER AND CROWN, AND THE IMPORTANT THING TO CONSIDER

14   THERE IS THAT NOT ONLY DID IT IDENTIFY PFIZER AS A U.S.

15   COMPANY, CROWN IS ALSO A U.S. COMPANY, BUT I THINK THREE OUT OF

16   THE FIVE SCIENTISTS ON THAT PAPER ARE ALSO U.S. SCIENTISTS, SO

17   WE DO BELIEVE THAT THERE ARE FACTS THAT WOULD INDICATE THAT AT

18   THE VERY LEAST THIS INFRINGEMENT WAS DONE BY TWO U.S.

19   COMPANIES.  THE FIRST AUTHOR AND THE LAST AUTHOR ARE BOTH U.S.

20   SCIENTISTS FROM PFIZER.  WE KNOW THAT PFIZER DEVELOPED A DRUG

21   BASED ON THIS RESEARCH, AND SO I THINK THERE IS SUFFICIENT

22   EVIDENCE IN THE COMPLAINT THAT THERE WAS SOME FORM OF

23   IMPORTATION OF THIS ACTIVITY INTO THE UNITED STATES.

24        THE COURT:  ISN'T THE THEORY THAT YOU'RE ESPOUSING

25   FORECLOSED BY THE FIFTH CIRCUIT IN *BAYER*, COUNSEL?  TALK ABOUT

1    THAT CASE A LITTLE BIT AND YOUR THEORY, SIR.

2            MR. VALENTI:   SURE.   WE TRIED TO DISTINGUISH THAT IN

3    OUR BRIEF.   I THINK IT IS A DIFFICULT CASE FOR US, I'LL ADMIT,

4    BUT AS WE POINTED OUT NOT ONLY ARE THERE POLICY REASONS WHY WE

5    BELIEVE THAT IT WOULD BE AN EXTREMELY UNFAIR RESULT TO GRANT

6    THEIR MOTION BASED ON THESE FACTS, BUT THERE ALSO IS A QUESTION

7    OF FACT THAT STILL EXISTS OVER WHETHER THIS ACTIVITY WAS DONE

8    IN CHINA OR NOT, WHETHER IT WAS DONE IN THE U.S., AND WHETHER

9    IT WAS DONE BY U.S. SCIENTISTS.

10           THERE IS A DECLARATION THAT'S BEEN OFFERED BY CROWN

11   THAT INDICATES THAT IT WAS DONE IN CHINA, BUT THAT'S ALL THAT

12   WE HAVE, OTHERWISE, THERE IS EVIDENCE THAT THIS WAS A

13   U.S.-BASED ACTIVITY, AND, IN FACT, THERE IS POSSIBLY EVIDENCE

14   THAT CROWN HAS IMPORTED THESE MOUSE MODELS INTO THE U.S. BASED

15   ON THIS ABSTRACT.

16           THE COURT:   WITHOUT RELYING -- I KNOW YOUR FEELINGS

17   ABOUT *BAYER*, BUT WITHOUT RELYING ON AN ARGUMENT THAT MIGHT BE

18   FORECLOSED BY *BAYER* FOR A MOMENT, IF WE COULD PUT THAT ASIDE,

19   COULD ANTICANCER AMEND THE COMPLAINT TO STATE AN INFRINGEMENT

20   CLAIM OR WOULD AN ATTEMPTED AMENDMENT BE FUTILE IN YOUR

21   OPINION, SIR?

22           MR. VALENTI:   THANK YOU, YOUR HONOR.   I DON'T THINK IT

23   WOULD BE FUTILE.   I THINK WE COULD AMEND THE COMPLAINT TO ADD

24   MORE SPECIFICITY AS TO THE U.S. ACTIVITIES OF CROWN AND PFIZER

25   JOINTLY.   WE DO KNOW, AS I MENTIONED, THAT AT LEAST THREE OUT

24

1    OF THE FIVE SCIENTISTS INVOLVED WERE U.S. SCIENTISTS, BASED IN

2    THE UNITED STATES.

3         THE COURT:  DO YOU WANT TO GO BACK AND SAY ANYTHING,

4    COUNSEL, ABOUT THE QUESTION THAT WE DEFERRED AS TO WHETHER OR

5    NOT YOU WOULD CONSIDER THE OPTION THAT THE COURT GAVE YOU ON

6    THE SUMMARY JUDGMENT VERSUS GETTING SUMMARY JUDGMENT ENTERED

7    AGAINST YOU?  I DON'T KNOW WHAT THE COURT'S GOING TO DO, BUT IT

8    WAS SOMETHING THE COURT CAME UP WITH, AND I WOULD APPRECIATE

9    YOUR COMMENTS.  I DON'T KNOW WHICH WAY THIS IS GOING TO GO.

10        MR. VALENTI:  THANK YOU, YOUR HONOR.  HONESTLY, WE DO

11   FEEL THAT THAT WOULD BE AN UNFAIR BURDEN CONSIDERING WE STILL

12   BELIEVE THAT THE PICS WERE SUFFICIENT, AND IF I MAY --

13        THE COURT:  IF I WERE TO -- I'M JUST TRYING TO GET A

14   SENSE OF THINGS HERE.  IF I WERE TO HOLD TO MY TENTATIVE AND

15   SAY THAT THIS IS THE -- SUMMARY JUDGMENT COULD BE GRANTED OR

16   YOU COULD PAY THEIR COSTS OF THIS MOTION -- AND WE HEARD FROM

17   CROWNBIO ON THIS, THEY WOULD JUST LIKE THE TIME SPENT IN

18   APPEARING TODAY, APPARENTLY, AND SOMETHING VERY MINIMAL

19   OTHERWISE, DO THAT AND AMEND.

20        MR. VALENTI:  IT'S CERTAINLY SOMETHING WE WOULD

21   CONSIDER, AND I DON'T WANT TO FORECLOSE ON THE POSSIBILITY AT

22   THIS POINT, YOUR HONOR.

23        THE COURT:  YOU WOULD HAVE TO, WHAT, KNOW MORE ABOUT

24   WHAT THAT COST WOULD BE?

25        MR. VALENTI:  EXACTLY.  CERTAINLY.  WE'RE A SMALL

1    COMPANY WITH LIMITED RESOURCES, AND, DEPENDING ON EXACTLY WHAT

2    COUNSEL FOR PFIZER AND CROWN CLAIMED, IT WOULD AFFECT OUR

3    CALCULATIONS CERTAINLY.  IF IT WAS A RELATIVELY SMALL AMOUNT

4    AND WE FELT FAIR, CERTAINLY WE WOULD CONSIDER IT.  IF IT WAS AN

5    ASTRONOMICAL OR WHAT WE FELT WAS AN UNFAIR AMOUNT, THAT WOULD

6    BE MUCH MORE DIFFICULT FOR US TO AGREE TO.

7         ON THE OTHER HAND, WE'RE IN A DIFFICULT POSITION AS A

8    SMALL COMPANY WHO FINDS EVIDENCE OF INFRINGEMENT BY A LARGE

9    COMPANY, SUCH AS PFIZER, AND IF I MAY VERY BRIEFLY, YOUR HONOR,

10   RESPOND TO A FEW OF THE POINTS THAT MR. DE BODO MADE.

11        THE COURT:  I JUST HAD ONE QUESTION LEFT FOR DEFENSE SO

12   YOU CAN CONSIDER THIS YOUR TIME TO COMMENT, SO GO AHEAD.

13        MR. VALENTI:  THANK YOU, YOUR HONOR.

14        FIRST OF ALL, I HEARD MR. DE BODO SAY THAT THIS KIND OF

15   LANGUAGE IN THE PICS DOESN'T PROVE A CASE, AND, AS THE COURT

16   INDICATED EARLIER, THAT IS NOT THE PURPOSE OF THE PICS.  THE

17   PICS AREN'T TO LITIGATE THE SUBSTANTIVE ISSUES OF INFRINGEMENT.

18   THEY'RE TO PUT THE DEFENDANT ON NOTICE OF WHAT THE PLAINTIFF'S

19   THEORIES OF INFRINGEMENT ARE.

20        WE STILL BELIEVE THAT WE DID THAT QUITE WELL, AND I

21   FIND IT INTERESTING TO POINT OUT THAT FOR ALL THE COMPLAINTS

22   THAT WE'VE HEARD ABOUT HOW DEFICIENT THESE PICS SUPPOSEDLY ARE,

23   PFIZER WAS ONLY ABLE TO IDENTIFY A MERE THREE ELEMENTS TO

24   ATTACK.  I THINK THAT'S SIGNIFICANT.  I THINK THAT SHOWS THAT

25   WE DID DO AN EXCELLENT JOB OF PRESENTING OUR CASE IN THE PICS.

1          NOW, THEY DID IDENTIFY THESE THREE ELEMENTS WHICH THEY

2     SAY ARE MISSING AND, THEREFORE, MAKE THE PICS INSUFFICIENT, BUT

3     AS I'VE ARGUED, AND I DON'T WANT TO BELABOR THE POINT, WE

4     BELIEVE THAT THOSE ELEMENTS WERE INHERENTLY IDENTIFIED IN THE

5     PICS.

6          WHEN I USE THE WORD "INHERENT," I USE IT IN ITS COMMON,

7     PLAIN ENGLISH SENSE, NOT IN ANY PATENT DOCTRINE.  IT'S A SIMPLE

8     CONCEPT THAT YOU COULD CALL IT COMMON SENSE.  COULD YOU SAY

9     THAT SCIENTISTS FROM PFIZER WOULD CERTAINLY KNOW THE BASIC

10    SCIENTIFIC CONCEPTS BEHIND THIS?  DID WE SPELL IT OUT IN

11    EXCRUCIATING DETAIL?  PERHAPS NOT, BUT I DON'T THINK THAT WE

12    WERE OBLIGATED TO DO SO.  I THINK WE SPELLED IT OUT IN

13    SUFFICIENT DETAIL TO CERTAINLY PUT THEM ON NOTICE OF WHAT OUR

14    THEORIES OF INFRINGEMENT ARE.

15         WE'RE FORTUNATE TODAY TO HAVE DR. HOFFMAN WITH US, AND

16    IF THE COURT IS INCLINED, HE'S CERTAINLY AVAILABLE TO ANSWER

17    QUESTIONS ON A MORE SPECIFIC SCIENTIFIC QUESTIONS, BUT I DO --

18    AGAIN, WITHOUT BELABORING THE POINT, I DO THINK THAT THE THREE

19    ELEMENTS THAT THEY IDENTIFIED WERE SUFFICIENTLY STATED IN OUR

20    PICS, THEREFORE, I DO BELIEVE THAT SUMMARY JUDGMENT SHOULD BE

21    DENIED ON THAT BASIS.

22         THE COURT:  THANK YOU.

23         MR. VALENTI:  THANK YOU, YOUR HONOR.

24         THE COURT:  I DON'T HAVE ANY SPECIFIC QUESTIONS OF DR.

25    HOFFMAN AT THIS TIME.  IF THERE'S ANYTHING THAT YOU THINK

1        SHOULD BE ADDED, I'M HAPPY TO ENTERTAIN IT, BUT I THINK WHAT I

2        HAVE IS SUFFICIENT FOR OUR PURPOSES TODAY.

3              MR. VALENTI:  THANK YOU, YOUR HONOR.

4              THE COURT:  THANK YOU.

5              I HAVE A FINAL QUESTION FOR PFIZER.  COUNSEL, IS IT

6        YOUR ARGUMENT THAT YOU COULD LITERALLY INFRINGE ON ANTICANCER'S

7        PATENT, BUT SO LONG AS YOU DO SO OUTSIDE OF THE UNITED STATES,

8        AND SO LONG AS YOU DON'T IMPORT A PRODUCT MADE BY THE PATENTED

9        PROCESS INTO THE UNITED STATES, THAT ANTICANCER HAS NO

10       RECOURSE?  IS THAT NOT, AS ANTICANCER CHARACTERIZES IT, A

11       LOOPHOLE IN THE PATENT LAW?

12             MR. DE BODO:  WELL, AS THE COURT KNOWS FROM OUR EARLIER

13       STATEMENTS ABOUT THE PATENTS, AND IF WE'RE TALKING ABOUT THE

14       FIFTH CAUSE OF ACTION, SO WE'RE TALKING ABOUT THE '337 PATENT,

15       THE METASTASIS ELEMENT, RIGHT, TO A SECONDARY SITE IS CLEARLY

16       NOT MET BY THE ARTICLE.  SO I'M JUST STARTING -- THE QUESTION

17       IS A LITTLE HYPOTHETICAL BECAUSE I WOULD SAY IT'S NOT OUR CASE

18       BECAUSE I THINK WE'VE PROVEN, AND WE'RE PREPARED TO PROVE, THAT

19       WE'RE NOT USING THIS PATENT.  EVEN IF EVERY ACTIVITY DESCRIBED

20       IN THE POSTER WERE OCCURRING IN THE UNITED STATES, THERE WOULD

21       BE NO INFRINGEMENT, AND THAT'S OUR POSITION, AS I THINK THE

22       COURT UNDERSTANDS BASED ON OUR OTHER BRIEF.

23             IN TERMS OF THE LAW, THE LAW IS PRETTY CLEAR, YOU KNOW,

24       PATENTS RELATE TO AN EXERCISE OF U.S. GOVERNMENT AUTHORITY, AND

25       SO IF SOMEONE IS DOING ACTIVITIES IN ANOTHER COUNTRY, AND IT

1       HAS A PROCESS -- A PATENT RELATING TO HAVING A MOUSE MODEL OR

2       MAKING A MOUSE MODEL, IF THAT GOES ON WITHIN THE FOUR CORNERS

3       OF CHINA, FOR EXAMPLE, U.S. PATENTS DON'T EXTEND, AND ONE WOULD

4       NOT BE INFRINGING U.S. PATENTS.

5              I GUESS WHAT I WOULD SAY ALSO IS, IN ADDITION -- I

6       THINK THE *BAYER* CASE IS VERY STRONG ON THIS, BUT I GUESS I

7       WOULD ALSO, TO THE EXTENT THAT THERE'S AN ISSUE ABOUT

8       INFORMATION THAT FLOWS FROM RESEARCH THAT'S DONE ABROAD, AND

9       WHETHER DATA AND INFORMATION CAN BE BROUGHT IN AND SO FORTH,

10      THERE ARE ADDITIONAL CASES POST-*BAYER*, WHILE NOT ON THE EXACT

11      ISSUES IN THIS CASE, I THINK THEY MIGHT BE INSTRUCTIVE IN

12      ADDITION TO *BAYER*.

13             THE *NTP VS. RESEARCH IN MOTION* CASE, 418 F.3D 1282,

14      1323, FEDERAL CIRCUIT 2005, CERT. DENIED IN 2006, SHOWS THAT

15      THE FEDERAL CIRCUIT CONTINUES TO SUBSCRIBE TO THE *BAYER*

16      PRINCIPLES IN TERMS OF DATA.

17             SO I WOULD SAY THAT, IN ANSWER TO THE COURT'S QUESTION,

18      THE LAW APPEARS TO BE, UNDER THE FEDERAL CIRCUIT, THAT USING

19      DATA FROM EXPERIMENTS DONE ABROAD CANNOT BE A BASIS IF THE

20      CLAIMED PATENTED ACTIVITY OCCURRED ENTIRELY IN ANOTHER COUNTRY

21      AND NOT IN THE UNITED STATES.  THERE CAN BE EXCEPTIONS.  THERE

22      ARE OTHER PROVISIONS, AND SO FORTH, BUT IN THE CIRCUMSTANCES OF

23      THIS CASE, I WOULD SAY THAT IT WOULD NOT GIVE RISE TO

24      LIABILITY.

25             IF I COULD TAKE A SECOND, YOUR HONOR --

1          THE COURT:  COUNSEL, THAT WAS THE ONLY OTHER QUESTION I

2     HAD FOR YOU.  IF YOU WANT TO TAKE A FEW MOMENTS AND TELL ME

3     SOMETHING, GO AHEAD.

4          MR. DE BODO:  IF THAT'S OKAY, I WOULD APPRECIATE IT.

5          I GUESS I WOULD JUST LIKE TO SAY A COUPLE OF THINGS IN

6     RESPONSE TO COUNSEL'S COMMENTS.  ONE COMMENT I GUESS I THINK

7     COUNSEL ASSERTED THAT PFIZER DEVELOPED A PRODUCT BASED ON THIS

8     RESEARCH.  I THINK THAT WAS SOMETHING THAT WAS SUGGESTED BY

9     COUNSEL, AND THE PRODUCT THAT WAS USED IN THE EXPERIMENTS THAT

10    ARE AT ISSUE IN THE POSTER IS SUTENT, WHICH WAS DEVELOPED YEARS

11    BEFORE ANY OF THE EXPERIMENTS THAT HAVE BEEN CONDUCTED THAT ARE

12    THE SUBJECT OF THE POSTER, SO I DON'T THINK THAT'S ACCURATE.  I

13    DON'T KNOW IF ALL OF THAT INFORMATION IS IN THE RECORD BECAUSE

14    IT WASN'T AN ASSERTION THAT WAS MADE, BUT IT'S JUST NOT

15    ACCURATE THAT SUTENT WAS DEVELOPED USING THIS DATA.

16         IN ADDITION, COUNSEL SAID, YOU KNOW, THAT THERE WERE

17    ISSUES ABOUT WHERE THE LOCATION WAS OF THE EXPERIMENTS THAT

18    WERE DONE BY CROWNBIO, BUT I THINK THE RECORD IS QUITE CLEAR

19    THAT IF YOU TAKE CROWNBIO'S INITIAL MOTION, WITH ITS

20    DECLARATION, IT IS MAKING A CLEAR ASSERTION, AND WITH SWORN

21    TESTIMONY, THAT THE EXPERIMENTS WERE DONE ENTIRELY IN CHINA.

22         ANTICANCER DIDN'T DISPUTE THAT.  THAT IS NOT DISPUTED

23    BY ANTICANCER IN THEIR PAPERS.  SO THIS IS A FULLY JOINED

24    ISSUE, AND IT'S A SUMMARY JUDGMENT MOTION, BECAUSE BOTH SIDES,

25    INCLUDING ANTICANCER, HAVE OFFERED TESTIMONY ON THIS MOTION.

1    DR. HOFFMAN HAD A DECLARATION ON THIS AS WELL.  AND SO THEY

2    DIDN'T DISPUTE THIS AT ALL.  SO AS THINGS ARE UNDER THE

3    RULES -- UNDER THE FEDERAL RULES, THERE ISN'T A DISPUTE ABOUT

4    THE LOCATION.  I DON'T KNOW THAT THERE'S ANYTHING IN THE PAPER,

5    THAT ANYTHING HAS BEEN POINTED OUT THAT SUGGESTS THE

6    EXPERIMENTS WERE DONE IN SOMEWHERE OTHER THAN CHINA, BUT I

7    THINK THE FINDING, YOU KNOW, BASED ON THIS MOTION HAS TO BE

8    PRETTY CLEAR THAT IT WAS ALL DONE IN CHINA.

9          ANOTHER POINT BY ANTICANCER WAS THAT THERE WAS A

10   COMMENT MADE THAT, YOU KNOW, THE PICS WERE SOMEHOW HELD UP AS

11   SUFFICIENT BECAUSE THERE WERE ONLY THREE ELEMENTS THAT PFIZER

12   FOCUSED UPON IN THIS MOTION.  WELL, THERE ARE PLENTY OF

13   ELEMENTS IN THE PATENTS THAT ARE NOT SATISFIED.  WE PICKED THE

14   THREE ELEMENTS WE DID BECAUSE THEY'RE REPEATED THROUGHOUT

15   MULTIPLE CLAIMS, AND SO THEY ARE -- ALL OF THE DIFFERENT

16   MULTIPLE CLAIMS ASSERTED AGAINST PFIZER WOULD BE PICKED UP BY

17   THESE THREE ELEMENTS, AND SO WE TRIED TO MAKE THAT -- THE

18   MOTION A LITTLE BIT SIMPLER AND MORE COMPACT, BUT IT CERTAINLY

19   DOESN'T INDICATE THAT THIS IS A MODEL OF CLEAR PLEADING AND

20   THAT THE PICS ARE REVEALING.

21         I ALSO WANTED TO FINALLY SAY THAT THE COURT ASKED ME

22   BEFORE ABOUT WHETHER I HAD CASES, OTHER THAN THE COURT'S OWN

23   CASES, ABOUT SUMMARY JUDGMENT IN THIS TYPE OF SITUATION, AND I

24   WOULD LIKE TO OFFER A COUPLE OF CASES THAT I THINK ARE RELEVANT

25   IN THIS ASPECT.  THEY'RE CASES WHERE SUMMARY JUDGMENT WAS

1     GRANTED AT A TIME WHERE PLAINTIFFS WERE TRYING TO AMEND THEIR

2     PICS, AND SO THEY HAD PRELIMINARY INFRINGEMENT CONTENTIONS, AND

3     THE COURT SAID, "YOU DON'T HAVE A BASIS TO AMEND YOUR PICS, SO

4     I'M GRANTING SUMMARY JUDGMENT."  SO I THINK THAT'S A CLOSE

5     ANALOGY.

6          AGAIN, I'LL JUST CITE THEM FOR THE COURT'S BENEFIT, AND

7     IF THE COURT FEELS THEY'RE RELEVANT, THEN IT'S A WORTHWHILE

8     THING TO DO.  *BERGER VS. ROSSIGNOL SKI COMPANY*.  IT IS 206 WL

9     1095914, AT PAGES 2 TO 3, NORTHERN DISTRICT CASE, APRIL 25,

10    2006.  AND *ATMEL VS. INFORMATION STORAGE SERVICES*, AND IT IS

11    1998 WL 775115, NORTHERN DISTRICT OF CALIFORNIA, NOVEMBER 5,

12    1998.

13         I THINK THERE ARE INDICATIONS OF OTHER COURTS

14    ADDRESSING A SIMILAR PROBLEM AND GRANTING SUMMARY JUDGMENT AND

15    NOT PROVIDING LEAVE, AND IF THE ANALOGY IS NOT PERFECT, THEN I

16    APOLOGIZE, IT'S JUST FOR WHATEVER VALUE THE COURT FINDS.

17    THAT'S ALL.  THANK YOU VERY MUCH.

18         THE COURT:  MR. VALENTI.

19         MR. VALENTI:  THANK YOU, YOUR HONOR.  JUST A BRIEF

20    RESPONSE.

21         FIRST OF ALL, RESPECTFULLY, I DON'T THINK THAT COUNSEL

22    DIRECTLY ANSWERED YOUR QUESTION ABOUT WHETHER THERE IS, IN

23    FACT, A LOOPHOLE IN THE PATENT LAW, AND I'M NOT GOING TO ANSWER

24    THAT QUESTION EITHER.  WE BELIEVE IT'S A PERCEIVED LOOPHOLE,

25    BUT WHETHER IT'S A PERCEIVED LOOPHOLE OR AN ACTUAL LOOPHOLE,

1      WHAT I'M HEARING IS DEFENDANTS SUCH AS PFIZER, VERY LARGE,

2      MULTI-NATIONAL PHARMACEUTICAL COMPANY WITH EXTREMELY VAST

3      RESOURCES, CAN SIMPLY CONTRACT OUT THEIR INFRINGEMENT, THAT

4      THEY CAN ACTUALLY JUST PRESENT THE OUTSOURCING DEFENSE AND SAY,

5      "SORRY, WE DID IT IN CHINA."

6           IF THAT'S THE STATE OF THE LAW, WE WANT TO STATE QUITE

7      FIRMLY THAT THAT'S JUST NOT FAIR AND IT'S INEQUITABLE,

8      ESPECIALLY FOR A COMPANY SUCH AS OURS, WHICH HAS RESEARCH TOOLS

9      PATENTS, AND IF THIS IS THE STATE OF THE LAW, AND THE LAW IS

10     GOING TO STAY THAT WAY, IT'S GOING TO EVISCERATE THE VALUE OF

11     RESEARCH TOOLS PATENTS FOR COMPANIES ALL OVER AMERICA, AND WE

12     DON'T THINK THAT THAT'S A FAIR RESULT.

13          I ALSO WANT TO POINT OUT THAT COUNSEL INDICATED THAT

14     SUTENT WAS DEVELOPED PRIOR TO THIS RESEARCH, AND, OF COURSE,

15     SUTENT DID EXIST PRIOR TO THE RESEARCH, BUT IT'S CLEAR THAT THE

16     ACTIVITIES THAT PFIZER AND CROWN PERFORMED TOGETHER, WHICH

17     CLEARLY INFRINGE, WERE DONE IN FURTHERANCE OF THE DEVELOPMENT

18     OF SUTENT, PARTICULARLY AS A TREATMENT FOR LIVER CANCER.

19          INDEED, THEY DID CREATE A PRODUCT OR RECONFIGURE A

20     PRODUCT BASED ON THE INFRINGING ACTIVITIES THAT WERE PERFORMED,

21     AND SO I THINK THERE IS DEFINITELY A FACTUAL ARGUMENT TO BE

22     MADE THAT PFIZER AND CROWN DID INDEED IMPORT THE RESULTS OR THE

23     ACTUAL -- THE IMPORTANT PART OF THE RESEARCH THAT THEY GAINED

24     FROM INFRINGING WAS USED TO FORMULATE SUTENT AS A LIVER CANCER

25     TREATMENT.

1    AGAIN, WE JUST THINK IT WOULD BE INCREDIBLY INEQUITABLE

2    FOR A BIG COMPANY LIKE THAT TO BE ABLE TO SAY, "SORRY, WE HAVE

3    THE OUTSOURCING DEFENSE. SINCE WE DID IT IN CHINA, WE'RE

4    SCOT-FREE." WE JUST THINK THAT THAT'S AN INEQUITABLE RESULT.

5    THANK YOU, YOUR HONOR.

6    THE COURT: LET ME ASK MR. LI. MR. LI, IS THERE

7    ANYTHING YOU WANT TO SAY, SIR?

8    MR. LI: SURE. I HAVE TWO POINTS I WANT TO COMMENT ON;

9    ONE IS ABOUT THE FUTILITY TO AMEND, LIKE MR. DE BODO INDICATED,

10   THERE'S NO EVIDENCE OR ALLEGATION ON THE RECORD THAT INDICATED

11   THEY WILL HAVE ANY GOOD FAITH BASIS TO MAKE ANY ALLEGATIONS

12   THAT CAN SUPPORT INFRINGEMENT UNDER 271(D) -- SECTION 271(D).

13   YOU SEE THE ONLY FACT ALLEGATION COUNSEL POINTED TO IS

14   THE FACT THERE'S THREE U.S. SCIENTISTS AS THE CO-AUTHOR OF THAT

15   ABSTRACT. THAT IS SPECULATION. THOSE SCIENTISTS WERE INVOLVED

16   IN ANALYZING THE DATA, AND -- TO REACH THE CONCLUSION IN THAT

17   PAPER TO BE PUBLISHED. SO BASICALLY I DON'T THINK THAT THERE'S

18   ANY INDICATION THAT THEY CAN AMEND THE COMPLAINT TO PASS THE

19   MUSTER FOR THE PLEADINGS STANDARD, AND SO I THINK IT WOULD BE

20   FUTILE TO ALLOW THEM TO AMEND AND FOR THE COURT TO JUST GRANT

21   THE MOTION WITHOUT LEAVE TO AMEND.

22   SECOND, I ALSO WANT TO FOLLOW UP WITH MR. DE BODO'S

23   COMMENTS ABOUT CONVERTING THIS TO A SUMMARY JUDGMENT MOTION

24   BECAUSE BOTH SIDES SUBMITTED DECLARATIONS AND -- WE SUBMITTED

25   DECLARATIONS TO SHOW THE FUTILITY OF AMENDMENT, BUT THEY

1    SUBMITTED DECLARATIONS BASICALLY ARGUING THE FACTS, SO THAT --

2    BY FEDERAL RULE THAT ESSENTIALLY CONVERTS US TO A SUMMARY

3    JUDGMENT MOTION, SO YOUR HONOR CAN RULE BASED ON THE FACT THAT

4    THEY HAVE NOT PROVIDED ANY EVIDENCE TO SUPPORT ANY ALLEGATIONS

5    OF CROWNBIO OR PFIZER IMPORTED A RODENT MODEL CLAIMS ON THE

6    PATENT.

7         SECONDLY, I WANT TO COMMENT ON THE LOOPHOLE ARGUMENT

8    BASED ON WHAT ANTICANCER HAS BEEN ARGUING, BUT ANY POLICY

9    CONSIDERATION IS A BALANCE OF THE INTERESTS.  THE SAME ARGUMENT

10   WAS MADE BEFORE THE FEDERAL CIRCUIT AND WAS BASICALLY DEFEATED

11   THERE BECAUSE THE MORE IMPORTANT THING IS IF WE ALLOW

12   INFORMATION -- IMPORT OF INFORMATION TO BE BASIS FOR HAVING --

13        THE COURT REPORTER:  I DIDN'T GET THAT.

14        MR. LI:  -- THE SLIPPERY SLOPE BECAUSE LIKE THE FEDERAL

15   CIRCUIT GAVE AN EXAMPLE, ONE PERSON --

16        THE COURT:  SIR --

17        MR. LI:  -- JUST BY PASSING THE BORDER CARRYING THE

18   INFORMATION IN HIS MIND, IN HIS THOUGHTS, IN HIS BRAIN, THAT

19   COULD CONSTITUTE A BASIS FOR INFRINGING, THAT WOULD BE NOT AN

20   ACCEPTABLE WAY FOR ENFORCING THE LAW.  SO THAT'S ONE ASPECT

21   BALANCED AGAINST THE PERCEIVED UNFAIRNESS.

22        ANOTHER ASPECT IS ANY BLOCK OF INFORMATION FLOW,

23   ESPECIALLY TECHNOLOGICAL INFORMATION, IN THE LONG RUN WILL BE

24   DETRIMENTAL TO THE DEVELOPMENT OF A SCIENCE AND THE TECHNOLOGY

25   IN THE UNITED STATES.  THAT'S A VERY IMPORTANT PART OF THE

1    CONSIDERATION TO BE BALANCED AGAINST THE PERCEIVED UNFAIRNESS.

2    THAT'S IT, YOUR HONOR.

3         THE COURT:  OKAY.  THANK YOU VERY MUCH, MR. LI.

4         LET ME ASK THOSE IN THE COURTROOM IF THERE'S ANYTHING

5    ELSE ANYBODY WANTS TO SAY.

6         MR. VALENTI:  VERY BRIEFLY.

7         THE COURT:  CERTAINLY.  IN LIGHT OF THE COURT'S

8    TENTATIVE, SIR, I'M GOING TO LET YOU HAVE THE FINAL WORD IN

9    THIS.  GO AHEAD.

10        MR. VALENTI:  CERTAINLY.  THANK YOU, YOUR HONOR.

11        FIRST, I DO WANT TO POINT OUT, IN RESPONSE TO MR. LI,

12   THAT THE ABSTRACT WHICH WE HAVE CITED IN OUR PICS, AND ALSO

13   HAVE INTRODUCED IN THE COMPLAINT AS OUR PRIMARY FORM OF

14   EVIDENCE OF INFRINGEMENT, THE VERY FIRST AUTHOR OF THAT

15   ABSTRACT, MR. GANG GARY LI, IS A U.S. SCIENTIST FROM PFIZER,

16   AND THE SENIOR AUTHOR, THAT'S THE LAST AUTHOR LISTED, DAVID

17   POCALYKO, IS ALSO A U.S. SCIENTIST FROM PFIZER.  MR. LI JUST

18   INDICATED THAT ACCORDING TO CROWN THE ONLY THING THAT THOSE

19   U.S. SCIENTISTS DID WAS REVIEW DATA, BUT THAT IS SOMETHING -- I

20   BELIEVE THAT'S MORE APPROPRIATE FOR DISCOVERY.  I BELIEVE THAT

21   THIS ABSTRACT SUFFICIENTLY SHOWS EVIDENCE OF U.S.-BASED

22   INFRINGEMENT THAT SHOULD BE SUFFICIENT TO ALLOW IT TO PROCEED

23   TO THE DISCOVERY STAGE, AND WE CAN FIND OUT MORE ABOUT EXACTLY

24   WHAT WERE THE ACTIVITIES IN THE UNITED STATES.  THANK YOU, YOUR

25   HONOR.

1          MR. DE BODO:  YOUR HONOR, I WANTED TO JOIN MR. LI'S

2     COMMENTS IN TERMS OF SAYING THAT THERE REALLY IS NO BASIS HERE

3     FOR ANTICANCER TO BE ABLE TO AMEND THESE CLAIMS.  THE THEORY

4     THAT HAS BEEN STATED IS CONTRARY TO THE LAW OF THE FEDERAL

5     CIRCUIT, IN *BAYER* AND SUBSEQUENT CASES AND SO, AGAIN, TO

6     SUGGEST THAT DISCOVERY SHOULD BE OPENED WHEN THERE HAS BEEN A

7     SUCCESSFUL SUMMARY JUDGMENT MOTION, THAT BOTH SIDES LITIGATED

8     THE SUMMARY JUDGMENT MOTION THAT ESTABLISHES THERE ISN'T A

9     THEORY -- THERE ISN'T A VIABLE THEORY, AND ALL WE'RE HEARING IS

10    POLICY ARGUMENTS THAT THE LAW SHOULD BE CHANGED, IS REALLY

11    SUBJECTING CROWNBIO, A SMALL COMPANY, AS WELL AS PFIZER,

12    ADMITTEDLY A SOMEWHAT LARGER COMPANY, TO A WASTE OF TIME.  I

13    MEAN, PFIZER AND ITS SCIENTISTS ARE ENTITLED TO PUT THIS CASE

14    BEHIND THEM AND TO MOVE ON TO IMPORTANT SCIENTIFIC ENDEAVORS,

15    AND IT'S NOT AN EXCUSE THAT ANTICANCER CLAIMS TO BE A SMALLER

16    COMPANY.

17          IN TERMS OF THE LOOPHOLE ARGUMENT, IF THERE'S A CONCERN

18    ABOUT REACHING ACTIVITIES IN CHINA AND OTHER COUNTRIES,

19    ANTICANCER SHOULD HAVE OBTAINED PATENTS IN OTHER COUNTRIES,

20    LIKE CHINA, AND ENFORCE THOSE PATENTS.  THAT'S REALLY THE

21    APPROPRIATE MECHANISM FOR DOING THIS, NOT SAYING THAT WE'RE

22    GOING TO APPLY U.S. PATENTS FOR ACTIVITY THAT OCCURS OUTSIDE OF

23    THE UNITED STATES, WHEN THE FEDERAL CIRCUIT HAS RULED

24    OTHERWISE.

25          FINALLY, THE REFERENCES TO SUTENT I APPRECIATE THAT

1        COUNSEL ACKNOWLEDGED THAT SUTENT HAD BEEN CREATED AND DEVELOPED

2        BEFORE THE WORK IN THIS POSTER.  THIS IS A SINGLE POSTER, A

3        SINGLE ARTICLE, AND SO FORTH.  IT DID NOT HAVE A SIGNIFICANT

4        IMPACT ON THE DEVELOPMENT OF SUTENT, THE USES OF SUTENT.  I

5        MEAN, SO THERE'S REALLY NOT SOME HIDDEN VALUE HERE THAT'S BEEN

6        IMPARTED.  SUTENT WAS CONTRIBUTED BY PFIZER TO BE USED IN THESE

7        TESTS, AND THEY WERE -- IT'S A ONE-TIME TEST, AND THEY GOT SOME

8        DATA FOR IT, BUT IT'S CERTAINLY NOT SOME GREAT USE OF THE

9        SUPPOSED PATENTED TECHNOLOGY.

10            THE COURT:  THANK YOU.  I'M GOING TO GIVE YOU THE FINAL

11       WORD, COUNSEL, AS I PROMISED, AND THEN I'LL DEEM THIS MATTER

12       SUBMITTED.  IS THERE ANYTHING YOU WANT TO SAY?

13            MR. VALENTI:  THANK YOU, YOUR HONOR.  YES, JUST VERY

14       BRIEFLY.  I DO WANT TO ADD THAT THE CROWN ABSTRACT, THE VERY

15       FIRST AUTHOR IS THE AUTHOR -- GENERALLY, IN SCIENTIFIC

16       PUBLISHING CONVENTION THE FIRST AUTHOR LISTED IS THE ONE THAT

17       DOES THE EXPERIMENTS, AND THE VERY FIRST AUTHOR IS A U.S.-BASED

18       PFIZER SCIENTIST.  THAT SURE RAISES AN INFERENCE THAT THESE

19       EXPERIMENTS WERE DONE BY U.S. SCIENTISTS IN THE UNITED STATES,

20       SO I WANT TO ADD THAT.

21            AND I WANT TO FINALLY SUM UP BY SAYING THAT WHAT I'VE

22       BEEN HEARING TODAY OVER AND OVER FROM BOTH SIDES, ON BOTH OF

23       THESE MOTIONS, IS NOT THAT THE DEFENDANTS DIDN'T INFRINGE, I

24       DIDN'T HEAR THAT ONCE TODAY.  AND I HAVEN'T SEEN IN ANY OF THE

25       BRIEFINGS A DECLARATION FROM A SCIENTIST FROM EITHER OF THOSE

1          COMPANIES SAYING, "WE DID NOT INFRINGE" OR "THESE ARTICLES ARE

2          NOT EVIDENCE OF INFRINGEMENT."  IT'S PRETTY CLEAR THAT THEY DID

3          INFRINGE, AND, YET, WHAT THEY'RE DOING IS TAKING A VERY

4          PROCEDURAL AND TECHNICAL ARGUMENT AND TRYING TO GET OUR CASE

5          OUT OF THE COURT BASED ON A PROCEDURAL ARGUMENT.  CERTAINLY

6          THEY HAVE EVERY RIGHT TO DO THAT.

7               I EQUATE IT WITH THE DAVID AND GOLIATH STORY, AND I

8          EQUATE IT WITH GOLIATH GETTING UP AND SAYING, "SORRY, DAVID,

9          YOU SCORED A DIRECT HIT, BUT YOUR SLINGSHOT JUST WASN'T A

10         REGULATION SLINGSHOT SO IT DIDN'T COUNT."  I DON'T BELIEVE THAT

11         WOULD BE A FAIR RESULT, YOUR HONOR.  THANK YOU VERY MUCH.

12              THE COURT:  IF I LET YOU SAY SOMETHING, I'M GOING TO

13         GIVE HIM THE FINAL WORD, BUT GO AHEAD.

14              MR. DE BODO:  YOUR HONOR, IT'S HARD WHEN SOMEONE SAYS

15         THAT HE HASN'T HEARD US SAY THAT WE DON'T INFRINGE, SO I GUESS

16         I FEEL THAT I OWE IT TO THE SCIENTISTS AT PFIZER TO SAY THAT WE

17         DON'T INFRINGE.  I THINK WE'VE ESTABLISHED IT IN TERMS OF THE

18         MOTION SAYING THAT THEY'RE MISSING THREE ELEMENTS, AND SO FORTH

19         FORTH, THAT'S CERTAINLY NOT WHAT WE MEAN TO COMMUNICATE.  THANK

20         YOU.

21              MR. LI:  YOUR HONOR, I ALSO WANT TO CLARIFY IN OUR

22         PAPERS WE SAID -- WE LITIGATING ON THE PROCEDURAL ISSUES BASED

23         ON ASSUMPTION AND IF THIS THING IS FOUND INFRINGING, BUT WE

24         DISPUTE ON THAT POINT, OF COURSE.  THAT'S NOT THE ISSUE OF THIS

25         MOTION, SO THAT IS NOT A VALID COMMENT.

1              THE COURT:  THANK YOU, MR. LI.

2              ANYTHING FINAL FROM ANTICANCER?

3              MR. VALENTI:  NO, THANK YOU, YOUR HONOR.

4              THE COURT:  SO THIS MATTER IS DEEMED SUBMITTED.  IN

5    LIGHT OF ALL THE COMMENTS AND ANSWERS TO QUESTIONS, I'M GOING

6    TO GO BACK THROUGH IT AGAIN AND YOU'LL HEAR FROM THE COURT.

7    THANK YOU.

8              MR. VALENTI:  THANK YOU, YOUR HONOR.

9              MR. DE BODO:  THANK YOU, YOUR HONOR.

10             MR. LI:  THANK YOU, YOUR HONOR.

11             THE COURT:  THANK YOU, MR. LI, GOOD-BYE.

12   (THE HEARING CONCLUDED.)

13

14

15

16                     C E R T I F I C A T E

17

18        I, GAYLE WAKEFIELD, CERTIFY THAT I AM A DULY
     QUALIFIED AND ACTING OFFICIAL COURT REPORTER FOR THE UNITED
19   STATES DISTRICT COURT, THAT THE FOREGOING IS A TRUE AND
     ACCURATE TRANSCRIPT OF THE PROCEEDINGS AS TAKEN BY ME IN THE
20   ABOVE-ENTITLED MATTER ON MAY 31, 2012; AND THAT THE FORMAT USED
     COMPLIES WITH THE RULES AND REQUIREMENTS OF THE UNITED STATES
21   JUDICIAL CONFERENCE.

22

23

     DATED:  NOVEMBER 20, 2012      /S/ GAYLE WAKEFIELD
24                                  GAYLE WAKEFIELD, RPR, CRR
                                    OFFICIAL COURT REPORTER
25